EASTERN DIST. appellee to pay the costs of appeal, and the appellant those
*April*, 1839. of the court below.

D'ORGENOY ET AL
*vs.*
DROZ.

D'ORGENOY ET AL *vs.* DROZ.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

The *price* of a sale must be serious; and a price which is out of all pro-
portion with the value of the thing sold, invalidates the sale.

A sale without a *price* is not binding as such, on the parties; but the act
may have effect as a donation, if it contains nothing contrary to public
order; provided the purchaser can receive a donation from the vendor,
and no injury results to third persons.

It has been adopted as a general rule of law, that a sale without a *price* is
a donation.

This is an action of jactitation, or slander of title, and
injunction to restrain the defendant from selling the land or
piece of ground described in the petition, of which the plain-
tiffs allege they are the true owners. They call upon the
defendant to come forward and state by what title he claims;
and that he be forever enjoined from setting up claim or title
to the same; and that the plaintiffs be declared the legal
and true owners.

The defendant pleaded a general denial; and set up title
by purchase from Madame Marie Rose Ramis, whom he calls
in warranty. He also pleads prescription.

The facts of the case are more fully explained in the fol-
lowing judgment of the District Court:

The ancestor of plaintiffs purchased of Antonio Ramis a
tract of land of two arpents front on the Bayou Road, in two
parcels—the first, of one and a quarter arpents front, by four

and a half in depth, on the 16th July, 1805 ; and the other three quarters of an arpent front, by four and a half in depth, on the 25th January, 1806.

By a subsequent agreement, he acquired, for the same consideration, all the depth beyond four and a half arpents. This agreement was made by authentic act, September 24th, 1807.

The controversy between the parties relates to a tract of land immediately in the rear of the four and a half arpents depth of the front tract of two arpents just mentioned, and contained within the prolongation of the side lines of the front tract, to the property of the estate of the late John Gravier.

The plaintiff asserts himself to be the owner, in virtue of the contract with Ramis of the 24th September, 1807. The defendant claims title under Madame Marie Rose Ramis, widow Castanedo, who is a party to this suit, and who alleges, that she is the proprietor of the tract in question, by inheritance from her father, who was never legally divested of his title to the same.

The argument has turned upon the construction of the act of 24th September, 1807. Its tenor is as follows : " Before Peter Pedesclaux, notary, &c., appeared Antonio Ramis, who declared that, on the 16th July, 1805, he should have sold, by act before the same notary, to Mr. F. L. d'Orgenoy, one and a quarter arpents of land front on the Bayou St. John Road, left side going out of town, and four and a half arpents in depth, with all its buildings, joining on one side a lot of Michel, free negro, and on the other the seller, for the sum of two thousand six hundred dollars ; likewise, he should have (or had) sold, by act also before said notary, on the 28th January of last year (1806), three quarters of an arpent of land front, adjoining the preceding, with the same depth of four and a half arpents of depth, for the sum of sixteen hundred dollars, which two sums make together that of four thousand and two hundred dollars : and for the same consideration he has, by these presents, sold, &c., all the depth which the two arpents might have over and above the

four arpents and a half, already related, to Mr. F. Le Breton d'Orgenoy, here present, and accepting for himself, his heirs and assigns, to be by him enjoyed and disposed of as a thing belonging to him, and to take possession of it when it shall seem good to him."

The defendant contends, that this act cannot be considered as a sale, for want of one of the essential attributes of that contract, to wit, a price ; that the price mentioned (four thousand and two hundred dollars) is that already stipulated for the front tract, and consequently, that there was nothing left to serve as a price for the back tract. He has quoted many authorities to show, that the want of a price in a contract of sale is so radical a defect, as to vitiate it, and render it utterly null and void, even between the parties.

Of the correctness of this doctrine, abstractedly, I have no doubt ; the authorities are too numerous and positive, to leave the least uncertainty upon it; but is it applicable to the present case ?

Following, then, at once, the words of the contract of the 24th September, 1807, and the intention of the contracting parties, I am bound to view that contract as a supplement of the sales of the 16th July, 1805, and the 28th January, 1806 ; and, as such, that the consideration is included in the price originally stipulated.

There is another question in this case, which has suggested itself to my mind. This suit is in the nature of an action for slander of title. In such an action, by the decision of the Supreme Court, in the case of *Livingston* vs. *Heerman*, in 9 *Martin's Reports*, 715, the burden of proof is upon the defendant. Before the defendant could be adjudged to be the proprietor of the land in dispute, it would therefore have been necessary for him to establish the title of Ramis to the said land. Now, the title of Ramis, given in evidence, to wit, the sale from Joseph Cultice to Ramis, of the 23d December, 1786, does not give the land of Gravier as a back boundary, nor does it give any precise depth to the two acres in question. The description of the extent of the tract is, " two arpents front, and the depth which it may have, and which may belong to it."

Ramis's title, however, cannot be called in question be-
tween the present parties, for they both claim under it.

Proceeding, therefore, to decide according to the views
above developed, and no damages having been proved, it is
adjudged and decreed that the injunction herein issued be
made perpetual; that the defendant be perpetually enjoined
from pretending title to the property described in the peti-
tion; and that the defendant pay costs.

From this judgment the defendant appealed.

*Denis* and *Labarre,* for the plaintiffs.

*Roselius,* for defendant, contended,

1. The act of the 24th September, 1807, cannot be con-
sidered as a sale; it wants one of the essentials of that con-
tract, the *price.* The consideration paid for another tract of
land sold in 1805 and 1806 cannot be considered as the price
of a much larger quantity sold in 1807, without subverting
every principle of law. The intention of the parties must
not be lost sight of; but when the law has declared in what
manner the parties shall manifest their intention, its pro-
visions are not to be disregarded. This is neither a sale nor
a donation.

2. Both parties claim under Ramis, therefore his title can-
not be questioned by either.

*Rost, J.,* delivered the opinion of the court.

In 1807, François Le Breton d'Orgenoy, the ancestor of
the plaintiff, and Antonio Ramis, entered into an agreement,
by notarial act, to the following effect:

"That whereas Ramis had sold to d'Orgenoy, in July,
1805, an arpent and a quarter front of land on the Bayou
Road, by four and a half arpents in depth, for the sum of
two thousand six hundred dollars; and in January, 1806,
three quarters of an arpent front of land on the Bayou Road,
with the same depth, for the sum of sixteen hundred dollars,
which two sums made together that of four thousand two
hundred dollars. For the same consideration, he, the said

Ramis, sold, ceded, abandoned and transferred to the said d'Orgenoy all the depth which the aforesaid two arpents of land might have under his title, over and above the four arpents and a half already conveyed, to be by him enjoyed and possessed as his property."

On the 11th of November, 1836, both parties to the contract being then dead, the heir at law of Ramis sold to the defendant, for a valuable consideration, the property attempted to be conveyed by the aforesaid act. The defendant having, shortly after his purchase, advertised it to be sold in lots at public auction, the plaintiffs enjoined the sale, and claimed title under the conveyance of Ramis. The defendant cited his warrantor, who answered, that she also claimed title under Ramis, her father, by inheritance, and that she never had been legally divested of it in favor of the plaintiffs, or of any other person. The District Court gave judgment in favor of the plaintiffs, and the defendant appealed.

Ramis had a good title to a large tract of low land back of the four arpents and a half, and the rights of the contending parties in relation to it depend exclusively upon the legal effects of the notarial act already mentioned. The defendant's counsel contends, that the consideration named in this act had already been received by the vendor, as the consideration of the previous sales; that the act purports, upon the face of it, to be a sale, and containing no price, is null and void.

The facts may be as stated by them, but the consequences which they deduce from those facts are not justified by law. The price of a sale must be serious; and Pothier says, that a price which is out of all proportion with the value of the thing sold, invalidates the sale : for instance, if an extensive landed estate was sold for a crown, the price would not be serious, for the price being nothing more than the valuation of the thing which the contending parties have agreed upon, a price which bears no proportion to that value cannot pass for a serious valuation, and is not in reality a price ; but the same author goes on to say, that such a contract is a donation, improperly called a sale.—*Pothier Contrat de Vente,* 19.

*The price of sale must be serious; and a price which is out of all proportion with the value of the thing sold, invalidates the sale.*

The Roman laws quoted at the bar all say that a sale without a price, or with an imaginary price, is not a sale, and is not binding as such upon the parties, for the want of one of the substantial requisites of that species of contract: but under that system of jurisprudence, as well as under ours, such acts took effect as donations, provided they contained nothing contrary to public order; and provided, further, that the purchaser could receive a donation from the vendor, and that no injury resulted to third persons. Those laws seem to have made no difference between acts stipulating a price which the vendor did not intend to receive, and such as contained an imaginary price, or no price at all; and, if the sale of a valuable estate made for a crown is a donation, because a crown is not a price, it is difficult to conceive why a sale mentioning a consideration which is less than a crown, or, as the defendant alleges in the present case, absolutely nothing but words, should not carry with it the same legal effects. Voët, in his Commentary upon the Pandects, goes fully into the subject, and treats it with his usual precision. Speaking of sales without a consideration, he says:—" *Nec reprobatæ fuerint, si quis eas celebrare voluerit, quoties neque legibus publicis, neque tertio per hujusmodi imaginarias venditiones fraus fit. Neque subsistant inter eos, inter quos, jura donationes prohibuerunt. Et ex hisce explicandum puro, quod a Paulo scriptum est, nudam & imaginarium venditionem pro non facta esse, & ideo nec alienationem eius rei intelligi; scilicet pro non facta est, in quantum valere nequit tanquam venditio, quia, deficiente pretio, emtio in sui deficit substantia; sed quod dominium non transibat ex venditione, ex donatione tamen, quæ imaginariæ inest venditioni, transferebatur mediante traditione.*"—Commentarius ad Pandectas, tom. 3, lib.18, tit.1, *l.*1.

Under the Spanish laws, it was not necessary to mention, in an act of donation, the value of the thing given; and the deed under which the plaintiffs claim would be similar to acts of donation, as they were made at the time of its date, if Ramis had said *I give,* instead of saying *I sell.* The words which the notary used, without a proper understanding of their legal meaning, ought not to prevent us from carrying into effect the intention of the parties.

EASTERN DIST.
*April,* 1839.

D'ORGENOY ET AL
*vs.*
DROZ.

A sale without a price is not binding as such on the parties; but the act may have effect as a donation, if it contains nothing contrary to public order; provided the purchaser can receive a donation from the vendor and no injury results to third persons.

EASTERN DIST. *April*, 1839.

D'ORGENOY ET AL *vs.* DROZ.

Indeed, we do not consider the legal question which this case presents as open for argument at this time. So far back as 1818, this court decided it, in the case of *Holmes and others* vs. *Patterson,* 5 *Martin's Reports,* 693. That decision went much further than is necessary for the purposes of the present case ; for the donation, in that instance, had not been accepted by the donee before the death of the donor, and neither the act of donation, nor the possession of the thing given, had been delivered. The court held the act to be valid notwithstanding, because the donor had made no

*It has been adopted as a general rule of law, that a sale without a price is a donation.*

other disposition of the property. Without expressing our concurrence in all the views taken by the court of the legal consequences of the facts of that particular case, we adopt the rule settled by the decision, that *a sale without a price is a donation ;* and, considering the loose and irregular manner in which title deeds are generally made in newly settled countries, and the paramount duty of courts to maintain ancient possessions, and to give effect to the titles under which they are held in any manner which the law justifies, we hold it to be founded on the soundest principles of justice, and the decision upon which it rests will never be disturbed by us.

The plaintiff's ancestor acquired the land in controversy under a donation from the defendant's author, and they have been in possession under it ever since. That donation, as long as it exists, is conclusive against the pretensions of the defendant ; and unless it had been set aside and rescinded, in an action instituted for that purpose, the defendant had no right to disregard it, by attempting, as he has done, to sell the property which the plaintiffs possessed under it.—*St. Avid* vs. *Weimpreinder's Syndic,* 9 *Martin,* 648 ; *Ham* vs. *Herreman,* 1 *Martin, N. S.,* 536 ; *Barbara* vs. *Saucier,* 5 *Ibid,* 361 ; *Yocum* vs. *Bullitt,* 6 *Ibid,* 364.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs ; reserving to the defendant his rights on the warranty.