223 So.2d 848

**Succession of Eugene H. DASTE.**

**No. 49341.**

June 9, 1969.

Rehearings Denied June 27, 1969.

Henry P. Dart, III, Dart & Dart, New Orleans, for applicant.

Joseph F. Monie, Joseph V. Bologna, William J. Wegmann, Oliver P. Carriere, Jr., New Orleans, for respondents.

SUMMERS, Justice.

Eugene H. Daste, died testate at his domicile in New Orleans on July 16, 1964. Decedent was survived by his widow in community, Mae Coltraro Daste. He had no forced heirs. His last will and testament dated October 14, 1960 was duly probated on August 10, 1964, and the testamentary executor proceeded with the administration of the succession.

In addition to other legacies in her favor, the widow was named residuary legatee under the will which also contained a number of special legacies to other relations.

In the process of administering the estate, the testamentary executor filed a "Petition for Homologation of Final Tableau of Distribution" on January 13, 1966 to which he attached a "Final Tableau of Distribution" covering the period through December 31, 1965.

The widow opposed the tableau, setting forth in her opposition that (1) all of the succession debts were charged to her,

contrary to the intent of the testator; (2) the claim of the community estate for enhancement of decedent's separate estate was not recognized; (3) the executor proposed to sell property in which the widow owned a one-half interest and had usufruct of the other one-half interest under decedent's will; (4) alternatively, she was a widow in necessitous circumstances entitled to the marital fourth; (5) the proposal to pay the executor a commission was improper; (6) the widow was not credited with certain U. S. Bonds or Petrochemical Company stock to which she was entitled; (7) legacies were credited to legatees who made no demand therefor; (8) funds were proposed to be distributed to the Succession of Olga B. Davis, an Arizona succession, with no qualified representative in this State; (9) the tableau was defective by proposing to distribute more funds than the executor had on hand; (10) no provision was made for payment of Louisiana inheritance taxes or 1965 State and Federal Income taxes, or to show total receipts or total disbursements, and the tableau was generally unintelligible; and, finally, (11) Gloria R. Huston, a particular legatee, was not shown as a debtor to the estate.

The tableau was also opposed by Gloria R. Huston, because (1) it failed to recognize her as part owner of certain stock; (2) it failed to list for distribution certain property contained in the inventory; (3)

it failed to recognize her as the owner of a 100 per cent interest in certain property with the usufruct thereof in the widow; (4) the executor, in order to pay debts, proposed to dispose of property which was bequeathed to her as a special legacy before exhausting the residue of the estate; (5) certain sums were not listed which the widow had removed from one or more homesteads; (6) the tableau failed to take into account enhancement of the widow's separate property by the community which had existed between the widow and decedent; (7) the tableau failed to recognize opponent Gloria R. Huston as owner of 88.23 shares of Occidental Petroleum Corporation stock; and, finally, (8) she opposed the tableau insofar as it proposed to sell any property bequeathed to her as a particular legacy.

A rule to be sent into possession of the community property previously filed by the widow, the rule to homologate the tableau, the oppositions to the tableau, related pleading and rules to show cause affecting other issues were considered together by the trial judge, after which, for written reasons assigned, he rendered a formal judgment dated July 6, 1966. In the judgment it was "Ordered, Adjudged and Decreed" that a purported codicil to decedent's will was not a testament, for it contained no dispositive language; the widow was the residuary legatee under the will and, as such, liable for all debts of the

succession; the widow was the particular legatee of shares of stock of Occidental Petroleum Company and the claim of Gloria R. Huston thereto was rejected; the widow forfeited no right to funds withdrawn by her from homesteads except that a credit for the amounts involved should be given the succession; the succession had no interest in certain movables, etc., listed for memorandum purposes in the inventory dated August 11, 1964; all accrued rents and dividends accumulated by the executor from properties bequeathed as particular legacies belonged to the respective legatees of those properties; the executor was entitled to compensation; claims for enhancement of the decedent's separate estate by the community were rejected; and the widow was not a widow in necessitous circumstances. In conclusion, the Court ordered the executor to file an amended tableau of distribution in accordance with the judgment and the law.

A motion for a suspensive and/or devolutive appeal from the foregoing judgment was filed by the widow and granted by the Court. Because the suspensive appeal bond was not timely filed, the appeal was perfected as a devolutive appeal.

Four motions to dismiss the appeal were filed by the testamentary executor and various legatees. Among other grounds for dismissal, these motions are predicated upon the authority of Article 3308 of the

Code of Civil Procedure which provides that,

"Only a suspensive appeal as provided in Article 2123 shall be allowed from a judgment homologating a tableau of distribution. The appeal bond shall comply with Article 2124.

"The succession representative shall retain a sum sufficient to pay the amount in dispute on appeal until a definitive judgment is rendered. He shall distribute the remainder among the creditors whose claims have been approved and are not in dispute on appeal." (Emphasis added.)

The Fourth Circuit found that a suspensive appeal had not been perfected, the appeal bond not having been filed within fifteen days. The Court, however, correctly recognized that a valid devolutive appeal had been perfected, but erroneously concluded that the widow was only entitled to a suspensive appeal at that stage of the proceedings and dismissed the appeal. Although there is dicta which indicates that the Court of Appeal construed the judgment of the trial court to be interlocutory and not appealable, we are convinced that the court of appeal judgment was actually based upon the theory that the July 6, 1966 judgment of the trial court was a judgment homologating the tableau of distribution from which only a suspensive appeal was permissible under the mandate of Article 3308 of the Code of Civil

Procedure. 195 So.2d 292. If the Court of Appeal had adopted either of the two alternatives to this result, it should have either dismissed the appeal as an unappealable interlocutory decree or it should have considered the merits of the issues presented by the valid devolutive appeal. The result the Court of Appeal did reach could only be reached if the judgment appealed from was considered a judgment homologating a final tableau of distribution, for only in that instance is a suspensive appeal mandatory.

We find the Court of Appeal improperly dismissed the widow's appeal because the trial court judgment of July 6, 1966 was neither an interlocutory judgment nor a judgment homologating the tableau of distribution. It was, instead, a final judgment adjudicating substantially all of the controverted issues in the succession on the merits.

■ The trial court judgment of July 6, 1966 was not a judgment homologating a tableau of distribution, as contemplated in Article 3308 of the Code of Civil Procedure, because it neither ordered, adjudged nor decreed that the tableau be approved or homologated. To the contrary, the judgment ordered the testamentary executor to "file an Amended Final Tableau of Distribution in accordance with this judgment and in accordance with law." Moreover, the judgment did not pass upon

some of the issues presented by the tableau, and it adjudicated issues presented by pleadings other than the petition to homologate the tableau. In other words, the judgment decided some controverted questions presented by the tableau and other questions at issue by the pleadings, and, since these adjudications would alter the computations and distribution proposed by the tableau, the judgment ordered the filing of an amended tableau as an alternative to the homologation.

When we decide that the trial court judgment of July 6, 1966 was a final judgment, other than a judgment homologating a tableau of distribution, we, of course, deny the validity of the dicta in the opinion of the Fourth Circuit (195 So.2d 292) to the effect that the July 6, 1966 judgment was interlocutory and nonappealable. In deciding that the judgment of July 6, 1966 was a final judgment, we decide also that a devolutive appeal could be taken from that judgment and it was not necessary to perfect a suspensive appeal as required in the case of a judgment homologating a tableau. See La.Code Civ. P. art. 3308 (1961).

■ The trial court judgment of July 6, 1966 was final primarily because it "Ordered, Adjudged and Decreed" the rights of the parties on the merits on substantially all of the principal questions in controversy concerning which nothing remained to be done except to incorporate

these decisions in an amended tableau to be submitted for homologation. In addition, the judgment decreed a purported codicil ineffective, for it lacked dispositive language; it fixed the widow's status as residuary legatee and her liability for the succession debts and her ownership of certain stock, funds and other movables; it fixed the entitlement to rents and dividends among the legatees, the compensation of the executor and disposed of claims for enhancement of decedent's separate estate by the community; and the judgment decreed that the widow was not a widow in necessitous circumstances.

All of these questions were resolved after protracted hearings involving the taking of testimony and the reception of other evidence. The processes of the law which are preludes to final judgments were fully observed. We have belabored this opinion with a detailed recitation of the substance of the oppositions and the judgment of July 6, 1966 to point out the basis for our finding that the issues involved trenched upon the merits of the cause.

It may be that the judgment was not a final judgment in the sense that it was the last judgment to be rendered in the case, but it did determine "the merits in whole or in part." La.Code Civ.P. art. 1841 (1961). And, therefore, it is not an interlocutory judgment which "does not determine the merits but only preliminary matters in the course of the action." La. Code Civ.P. art. 1841 (1961).

We have relied to a great extent in this decision upon the authority of Oliphint v. Oliphint, 219 La. 781, 54 So.2d 18 (1951); Garland v. Dimitry, 164 La. 875, 114 So. 718 (1927) and Cary v. Richardson, 35 La.Ann. 505 (1883), for we are unaware of any provision of the new Code of Civil Procedure which would nullify the applicability of the reasons and conclusions announced in these cases decided prior to the promulgation of the Code.

Since the trial court judgment of July 6, 1966 was a final judgment from which a devolutive appeal was authorized by law, and because a devolutive appeal therefrom was actually perfected, the case was properly before the Court of Appeal. When the Court erroneously dismissed the appeal, therefore, it was necessary that appellant apply to the Court of Appeal for a rehearing and point out the error of its judgment (which was done) and, if the application for rehearing was denied (which it was), it was necessary to apply to this Court within thirty days of the refusal for writs of certiorari to review the court of appeal judgment (which was not done). We think it is appropriate to mention parenthetically that counsel for the widow erroneously read the court of appeal opinion to mean that the judgment of July 6, 1966 was interlocutory and therefore not reviewable on certiorari.

As we have already noted, we read the court of appeal opinion to mean that the appeal was dismissed because the judgment of July 6, 1966 was a judgment homologating a tableau of distribution, which, under Article 3308 of the Code of Civil Procedure, must be appealed from suspensively. Although the Court of Appeal was in error, no application was made to this Court for certiorari, and the judgment of the Court of Appeal dismissing the appeal became definitive acquiring the authority of the thing adjudged. La.Const. art. 7 § 11; La.R.S. 13:4446, 13:4450; La. Code Civ.P. art. 1842.

When the appeal was dismissed, the application for rehearing denied, and no application for certiorari to review the judgment was timely lodged in the Supreme Court, the matter was again presented to the trial court by the executor in compliance with the order of July 6, 1966 by filing an amended final tableau of distribution on July 11, 1967. Simultaneously with the filing of this amended final tableau, the executor filed for the first time a petition to sell the duplex house and lot known as 6468–70 Canal Boulevard, listed as an asset of the separate estate of the decedent.

To this amended tableau of distribution the widow again filed an opposition in which she urged new objections and renewed those which were the subject of

the judgment of July 6, 1966. She also filed a declaratory judgment action setting forth all of the claims made in her opposition.

Among these new claims was her opposition to the sale of the property on Canal Boulevard based upon contentions not previously adjudicated.

Another issue not previously adjudicated was whether the attorneys for the executor could claim fees against the estate for services rendered to the executor individually and to other legatees, inasmuch as the fees were substantially increased after the original judgment was rendered.

Gloria R. Huston, the legatee previously mentioned, also opposed the amended final tableau but she did not appeal from the denial of her claim and the judgment is final in that respect.

The widow's opposition to the amended final tableau and her petition for a declaratory judgment presenting the same issues were met by exceptions of res judicata filed by the executor and legatees based upon the finality of the judgment of July 6, 1966. Judgment was rendered on October 19, 1967 maintaining the exception to the petition for declaratory judgment insofar as the issues adjudicated in the July 6, 1966 judgment were concerned. On December 11, 1967 the trial judge likewise maintained the exception of res judicata to the opposition. Application for a

new trial was denied and, in due time, the amended final tableau of distribution was "approved and homologated" by a formal judgment rendered on January 25, 1968. From this judgment the widow perfected a suspensive appeal to the Fourth Circuit where the judgments maintaining the exceptions of res judicata and homologating the tableau were affirmed. 210 So.2d 521.

The exceptions of res judicata were properly maintained insofar as the issues adjudicated in the judgment of July 6, 1966 were concerned because that judgment had become definitive. Only those issues formed by other pleadings or the opposition to the amended final tableau of distribution, which were not adjudicated in the judgment of July 6, 1966, were subject to review by the Court of Appeal on the second appeal.

When the amended final tableau of distribution was filed, the executor also filed a petition to sell a duplex house and the lots upon which it was located in order to pay the debts of the succession. This property was assigned municipal number 6468–70 Canal Boulevard and was listed on the inventory as an asset of decedent's separate estate. One half of the duplex had been occupied by decedent and the widow as their home, the other half being rented.

The widow opposed this sale on two grounds: First, because she claimed ownership of an undivided half interest in this property by virtue of an inter vivos donation from her husband, the decedent, during the marriage. She asserts the donation was evidenced by a sale and resale transaction with a local homestead association; and, secondly, she claims that the life usufruct of the other one-half interest in this property belongs to her as a result of a special legacy in decedent's will. For these reasons, she contends, the property on Canal Boulevard does not form a part of the residuum which can be sold to pay the debts of the succession.

The facts which relate to the contention that the decedent donated a one-half interest in the Canal Boulevard property to the widow by a sale and resale transaction are formed by reference to the will and a stipulation between the parties. The decedent, Eugene H. Daste, acquired the property at 6468–70 Canal Boulevard on October 7, 1927. He married Mae Coltraro, the widow whose claims we are now considering, on September 23, 1952, and on April 6, 1956 he sold the property to the Third District Homestead Association for $12,000 cash. On the same day the homestead resold the property to "Mae Coltraro, wife of Eugene H. Daste, and the said Eugene H. Daste" for $12,000 on terms of credit evidenced by a note executed by Eugene H. Daste and Mae Coltraro Daste. These notarial acts were executed on the same day and filed for registry. The note

and mortgage were later cancelled on July 25, 1960.

In his last will and testament dated October 14, 1960, the decedent, Eugene H. Daste, declared:

"To my wife Mae Daste to whom I already gave title of ownership of half of my residence (property) home) No. 6468–70 Canal Boulevard, the usufruct of the balance (my other half) of this property for as long as she lives, and at her death the ownership of this half to revert to my niece Gloria R. Huston * * *."

It is the widow's contention that the reference in the will to the fact that the decedent had already given one-half of the home property to the wife was a reference to the sale and resale transaction. Thus it is argued, the intention that the sale and resale transaction would operate as a donation of a one-half interest to the wife is manifested both by the sale and resale transaction itself and by the last will and testament.

Article 1746 of the Civil Code provides that "One of the married couple may, either by marriage contract or during the marriage, give to the other, in full property, all that he or she might give to a stranger."

■ Since decedent had no forced heirs, there were no legal restrictions upon the

amount of his property he could donate to his wife. And we are satisfied that decedent undertook the sale and resale transaction intending thereby to donate to his wife a one-half interest in the home property. Undoubtedly he was convinced that the transaction had that effect until his death.

We have been referred to a number of cases where a sale and resale transaction was held not to convert the separate character of the property of one of the spouses into community property. And there are other cases which hold that because of the prohibition contained in Article 2446 of the Civil Code one spouse may not sell to the other during marriage except by dation en paiement, to replace dotal or other effects of the wife, or to fulfill a promised dowry to the husband. See Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960); Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959); and Ruffino v. Hunt, 234 La. 91, 99 So.2d 34 (1958).

But these cases are not appropriate to the widow's contention. She is not contending that the character of the property has been changed from separate to community by the sale and resale transaction, nor is she claiming that her husband sold a one-half interest to her—instead she is claiming that the decedent gave her a one-half interest in the property, and the sale and resale transaction was the vehicle utilized to accomplish this result.

■ It is clear to us that the parties sincerely intended this result; that the donation was made at a time long prior to the inception of the rights of the creditors whose obligations are sought to be satisfied here and without any intention of avoiding creditors; and the sale and resale transaction, executed before a notary public and two witnesses and signed by decedent and the widow, is clothed with the formalities required by law for the validity of donations inter vivos. These instruments, therefore, though they purport to be sales and resales, are considered as a donation of a one-half interest in the property to the wife by the husband. It is well settled law in this state that an instrument which purports to be a sale of immovables which fails to satisfy the legal requirements as such, may nevertheless suffice as a donation inter vivos if the requirements of law for donations are satisfied. La.Civil Code art. 1536 et seq.; Harper v. Pierce, 15 La.Ann. 666 (1860); Johnson v. Alden, 15 La.Ann. 505 (1860); D'Orgenoy v. Droz, 13 La. 382 (1839); Rhodes v. Rhodes, 10 La. 85 (1836); and Holmes v. Patterson, 5 Mart. (O.S.) 693 (1818).

Adopting this rule of law as a basis for our decision we hold that Eugene H. Daste made a valid donation inter vivos to his wife Mae Coltraro Daste of an undivided one-half interest in the Canal Boulevard property.

The disposition from decedent's will of October 14, 1960 which reads, "the usufruct of the balance (my other half) of this property for as long as she lives, and at her death the ownership of this half to revert to my niece Gloria R. Huston * * *" effectively bequeathed to the widow the life usufruct of the Canal Boulevard property as a particular legacy. Thus, by virtue of the donation inter vivos of a one-half interest in that property in full ownership and the bequest of the life usufruct by particular legacy of the other one-half interest, no part of that property or interest of the widow in that property falls into the residuum of the decedent's estate.

. The one-half interest in the Canal Boulevard property bequeathed to Gloria R. Huston and the usufruct of that one-half interest bequeathed to the widow do, however, form part of decedent's estate. Under these circumstances, the particular legatee of the usufruct, in that capacity, is not bound to pay the debts. La.Civil Code arts. 581 et seq. Moreover, we are of the opinion that should the one-half interest of Gloria R. Huston in the Canal Boulevard property be sold to pay its proportion of the succession debts, with the other particular legacies, in the event the residuum is exhausted, it must be sold subject to the usufruct of the widow.

Finally, the issue of attorneys' fees is a question of fact. The work performed by

the attorneys for the executor and to be hereafter performed in winding up the succession is well worth $19,300 and that amount is approved.

For the reasons assigned, it is ordered, adjudged and decreed that Mae Coltraro Daste is recognized as the owner of an undivided one-half interest in and unto the following described property, by virtue of an inter vivos donation made to her by the decedent, Eugene H. Daste, which said property is described as follows, to-wit:

"TWO CERTAIN LOTS OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes and appurtenances thereunto belonging or in anywise appertaining situated in the SECOND DISTRICT of the City of New Orleans, in SQUARE NO. 218 of Lakeview, bounded by Canal Boulevard, Louis XIV (formerly Bienville), Lane and Braggs Streets which lots are designated by the Nos. 45 and 46 on the map of the New Orleans Land Company lands on file in the City Engineer's office, according to which plan said lots adjoin each other and measure each 25 feet front on Canal Boulevard, same width in the rear, by a depth between equal and parallel lines of 129 feet. IMPROVEMENTS BEAR MUNICI-

PAL NOS. 6468–70 CANAL BOULEVARD.

"Being the same property acquired by Eugene H. Daste by purchase from New Orleans Land Company as per act of sale before John Wagner, Notary Public, dated October 7, 1927, registered in C.O.B. 433, folio 403. (Subsequent homestead transaction by Eugene H. Daste to Third District Homestead and re-transfer by Homestead to Mr. and Mrs. Eugene H. Daste, as per act before Edmund T. Wegener, Notary Public, dated April 6, 1956, registered in C.O.B. 611, folio 80."

It is further ordered, adjudged and decreed that the said Mae Coltraro by virtue of a particular legacy to her in the last will and testament of the decedent, Eugene H. Daste, be and she is hereby recognized as entitled to the life usufruct of the other undivided one-half interest in the above described property.

It is further ordered, adjudged and decreed that the amended final tableau of distribution filed in this succession be further modified and amended to reflect the views herein expressed and, as so amended, the same is hereby approved and homologated.

Costs of this appeal and the costs in the second appeal in the Court of Appeal are to be borne by the succession.