246 So.2d 26 (1971)
Succession of Mrs. Lena VACCARO, Wife of Thomas Joseph RUSSO.
No. 4364.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1971.
Rehearings Denied April 5, 1971.
Writ Refused May 24, 1971.
*27 Reuter, Reuter & Schott, Patrick M. Schott, New Orleans, for appellant.
Clay, Coleman, Dutrey & Thomson, Jack W. Thomson, New Orleans, for appellee.
Before REGAN, LEMMON and TAYLOR, JJ.
REGAN, Judge.
The testatrix, Mrs. Lena Vacarro, wife of Thomas J. Russo, died in August of 1968; immediately thereafter her testament in statutory form, was admitted to probate. The testatrix's `niece, Mrs. Marilyn Nuccio Guercio, was then confirmed as the testamentary executrix.
A public inventory was taken of the testatrix's property, and certain real estate mentioned in the will as 1621-23 Pauline Street and two accounts in Fidelity Homestead and Third District Homestead were listed thereon as the separate property of the testatrix. The surviving spouse, Thomas J. Russo, then traversed the inventory in an effort to have these three items of property classified as community property on the inventory. The trial court ordered that the inventory be amended in order to change the designation of the Pauline Street property and the two homestead accounts as community property; moreover, he reserved the rights of the litigants to assert by separate action any claims which they may have with respect to the classification of any of the property included in the inventory.
Consequently, the testamentary executrix filed a petition requesting that the court declare the Pauline Street property and the two homestead accounts as the testatrix's separate property. The surviving spouse filed an answer which disputed the separate nature of the Pauline Street property and the homestead accounts, and reconvened for a declaration that certain other real estate classified in the inventory as the testatrix's separate property also be declared community property.
The lower court rendered judgment dismissing both the suit of the testamentary executrix and the reconventional demand of the surviving spouse. From this judgment, the testamentary executrix has appealed, and the surviving spouse has answered the appeal, both requesting the same relief which they sought in the lower court.
It is undisputed that the property on Pauline Street was acquired by the testatrix long before her marriage to Russo in 1935. However, the surviving spouse insists that the property is community property because in October of 1944 the testatrix executed a cash sale of the Pauline Street property for $2,500.00 to one George J. Luquet, and on the same day another cash sale for the identical sum was executed by Luquet to Mr. and Mrs. Russo by virtue of which title to the property was placed in their respective names. The surviving spouse candidly conceded that no cash price was ever paid to the vendor in either act of sale, and that the entire transaction was, in fact, a simulation. He also related that he had repaired the property prior to this transaction and had expended about $4,500.00 of his own money therefor. *28 As a result, and in order to assure him that he would always have a place in which to reside, the testatrix, according to his testimony, conceived of the idea of executing the sale from her and the resale to them both so as to make the property community in nature.
We are of the opinion that this fact situation is encompassed by the rationale emanating from the Succession of Daste[1] in which the organ for the court reasoned that a sale and resale through the medium of a savings and loan association from the husband to the husband and wife jointly constituted a valid and effective donation of one-half of the husband's interest in said property, since the act of sale was in authentic form sufficient to effect a donation inter vivos. As in Daste, the facts herein disclose that there were neither forced heirs nor creditors to prevent such a donation, so that Article 1746, which provides that a spouse during the marriage may give to the other spouse "in full property, all that he or she might give to a stranger." The Supreme Court in the Succession of Daste did not consider Article 1754[2] to be an impediment to such a donation, and we are convinced that any modification or change in the rationale of the Daste case is solely within the province of that court.
The next issue posed for our consideration involves the separate nature of certain properties designated on the inventory as being located on France Street and North Robertson Street in the City of New Orleans. It is uncontested that the testatrix inherited this property from her parents in indivision with her two sisters. On November 13, 1964, an act of partition was executed before a notary public wherein the property was divided in kind. However, in order to equalize the values received by each of the three sisters, it was necessary for the testatrix to advance an amount totalling $3,433.33, which was withdrawn from the community checking account. The surviving spouse, Thomas J. Russo, contends that the mere use of such funds had the legal effect of converting the property received by the testatrix in the partition agreement into community property. In support of this contention he refers us to cases in which the Louisiana courts have reasoned that property acquired in a sale is community if separate and community funds are used as consideration therefor.[3] Russo embellishes his argument by insisting that without the benefit of the community funds the partition would not have been consummated and the testatrix would never have acquired the properties in question. However, the fallacy in this argument lies in the fact that at the time of the partition the testatrix was already in possession of an undivided interest in these properties, and that a judicial partition could have been used in the event that the community funds had not been available. Consequently, it is obvious that his argument, to reiterate, is fallacious.
Nevertheless, the fact is that the community did advance for the benefit of the testatrix's separate estate the sum of $3,433.33. To that extent, the community is entitled to a credit, and the lower court erred in not so holding.[4]
As the result of the sale by Mrs. Russo of the property mentioned above, on March 27, 1967, Mrs. Russo, the testatrix, received the sum of $13,966.32. This sum was represented by two checks, one for $8,966.32 made payable to her and a second for $5,000.00 made payable to Mr. and Mrs. Russo *29 so and others whose interest therein is immaterial to the facts now before us. Immediately after the sale, Mr. and Mrs. Russo deposited the check for the larger amount in the Fidelity Homestead in a joint account payable to "Mr. or Mrs. Thomas J. Russo." Russo testified that it was placed in both their names so that he would have access thereto in the event that something fortuitous would happen to his wife. Thereafter, on the same day in order to be protected by the then-existing $10,000.00 insurance on savings and loan association deposits, Mrs. Russo proceeded to deposit the second check for $5,000.00 in the Third District Homestead. The question again posed for our consideration is the paraphernal or community nature of each of these accounts.
The jurisprudence is clear to the effect that when separate funds are comingled with community funds to the extent that the separate funds are no longer capable of identification, and it is impossible to establish what part of the funds belong to the separate estate or to the community, then all of said funds are regarded as forming part of the community. However, if only a relatively small amount of community funds are comingled with separate funds, then the mixing of such funds will be considered as inconsequential, insufficient to constitute a comingling, and it will not warrant the classification of all such funds as community property.[5]
The Fidelity Homestead account was opened on the day of Mrs. Russo's sale of her separate property. At that time she deposited $8,966.32 derived therefrom. With the exception of credits to the account for interest earned, the only other deposits made therein were one for $60.00 on September 11, 1967, and one for $283.00 on September 19, 1967. As of the date of death, the balance in the account, after various withdrawals, was $7,521.09. By virtue of these facts it is clear that the comingling of the amount deposited originally by Mrs. Russo and the sum of $343.00, which is admittedly community property, is inconsequential and not such a comingling as to cause the funds to lose their separate identities. Counsel for the executrix concedes that in conformity with the rationale appearing in the Succession of Sonnier[6] it is presumed that all subsequent withdrawals from such an account are made from the separate funds. Predicated on this presumption and counsel's concession, we are convinced that the community is entitled to a credit of $343.00, but the remaining sum of necessity must be classified as the separate and paraphernal property of the testatrix.[7]
The opposite result must be reached with respect to the Third District Homestead account. This account dates back to December 26, 1956, when it was opened with a deposit of $1,800.00 of community funds. The evidence inscribed in the record discloses that this account was used actively as the community's regular savings account, and this fact is substantiated by the circumstance that the pass book reflects over 108 transactions prior to Mrs. Russo's death. When she died the balance, of the account was $6,815.82, and after examining the account, its many deposits and withdrawals, and its ultimate balance, we conclude that it is impossible to determine or to trace the deposit of $5,000.00 in community funds. Consequently, it is apparent that the $5,000.00 deposited by Mrs. Russo in the Third District account must be designated as community in nature because of the comingling of separate and community funds, and must be treated as such by the executrix.
The final issue which remains for our determination emanates from the *30 executrix's argument to the effect that in the event the deposits made into either of the savings and loan association accounts were held to be community, then the testatrix's separate estate is entitled to a credit for the amount placed therein for the benefit of the community. In support thereof, she relies on the rationale of Succession of Videau,[8] which allowed a credit for separate property which had become comingled with the community's estate. In that case, the court reasoned, however, that mere proof that the surviving spouse had a separate estate which was reduced to cash in the community account is not of itself sufficient to support a judgment for reimbursement of the separate estate upon the dissolution of the community. There must be proof that the funds sought to be credited did in fact inure to the benefit of the community.[9] An analysis of the Videau case and the cases cited as authority therein reveal, however, that the type of benefit which must inure to the community as a result of the community comingling of the separate funds, must be of such a nature as to give the community a strong and substantial economic advantage. In the present case, there was no proof offered of any benefit to the community arising from the deposit of the separate funds in the Third District Homestead account. The only benefit derived therefrom was the accrual of interest on said amount, but said interest would have been community in nature in any event since the testatrix did not maintain exclusive administration of the money, nor did she file an affidavit of paraphernality in the conveyance records in conformity with Article 2386 of the Civil Code. Hence, the separate estate of the testatrix is not entitled to credit for the money which was comingled with community funds in the Third District Homestead account.
For the foregoing reasons, the judgment of the lower court is affirmed in part, and reversed in part, and this matter is now remanded to the lower court for additional proceedings consistent with the views expressed hereinabove.
Reversed in part, affirmed in part and remanded.
LEMMON, Judge (concurring).
I do not agree that the admittedly separate funds deposited in the community (Third District Homestead) account became so comingled with community funds as to be no longer capable of identification. Although the majority alludes to 108 transactions in this account before Mrs. Russo's death, all but three occurred before the $5,000.00 deposit. After this deposit there was a $1,000.00 withdrawal and a subsequent deposit in the same amount. Finally, there was a $5,000.00 withdrawal six weeks before Mrs. Russo died of cancer.
The husband testified that, on his wife's instructions, he withdrew $5,000.00, cashed the check and gave the cash to his wife. He did not know what she did with the money.
It therefore seems proper, under the rationale of Succession of Sonnier, supra, to regard this withdrawal as coming from the identical amount of separate funds on deposit and identifiable in the account, unless the contrary is proved. This is particularly true since the account balance after the final withdrawal was exactly the same (except for dividend credits) as before the deposit of the separate funds.
*31 Since there were no separate funds remaining in this account at Mrs. Russo's death, I therefore disagree that the controlling reason for denying the credit to the separate estate is that the funds did not inure to the benefit of the community.
However, even if the funds were properly found to be comingled and no longer separate, I further disagree with the type of "benefit of community" test used by the majority.
In Succession of Bell, 194 La. 274, 193 So. 645, the Supreme Court stated:
"There is no fixed rule or standard of proof required to establish that the contribution of the separate funds of the husband has been used to benefit the community. To establish such a claim it must be shown with reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution, and that the separate funds were not wasted by the husband or disposed of for his separate benefit."
In my opinion the "benefit of community" requirement of Succession of Bell and Succession of Videau, supra, is a safeguard against a spouse claiming a credit for separate funds which, after becoming comingled, the spouse used for his separate benefit rather than for the benefit of the community. The safeguard is obviously to prevent "double dipping".
The test applied by the majority"that the type of benefit which must inure to the community as a result of the community comingling of the separate funds, must be of such a nature as to give the community a strong and substantial economic advantage"is in my opinion too arbitrary to be workable. If separate funds are comingled with community funds so that they are no longer distinguishable, the question of credit to the separate estate should be resolved by proof of which estate (separate or community) ultimately benefited from these funds. The question should not be resolved by such an arbitrary "strong and substantial economic advantage" standard proposed by the majority.
As to the Pauline Street property, I concur in the result. The fact of Mrs. Russo's intention to donate a one-half interest to her husband is obvious by the transaction itself, which could serve no other useful purpose. We should give effect to this intention within the bounds of legal process.
A donation by one spouse to the other during the marriage is authorized by LSA-C.C. art. 1746. The limitation of such a donation in full property is "all that he or she might give to a stranger." This limitation obviously refers to the disposable portion or quantum,[1] and the spouse is therefore prohibited from donating directly to the other spouse an amount in excess of the disposable portion.
LSA-C.C. art. 1754[2] further prohibits a spouse from donating indirectly to the other spouse what he cannot donate directly. If such a prohibited donation (for example, one in excess of the disposable portion) is disguised or made to persons interposed, the entire donation is null and void. This is to take the attempted indirect donation out of the provisions of LSA-C.C. art. 1502, which provides that donations exceeding the disposable portion are not null but only reducible to that quantum.
In this case there were no forced heirs and therefore no forced portion. Mrs. Russo could therefore make the donation to her husband directly under Article 1746 and was not prohibited from making it indirectly by Article 1754.
*32 It is my opinion that there is no conflict between Articles 1746 and 1754. The donation was valid since an instrument purporting to be a sale which does not satisfy the legal requirements as such may nevertheless suffice as a donation inter vivos, if clothed with the formalities required for a donation inter vivos. Succession of Daste, 254 La. 403, 223 So.2d 848 (1969).
I would not distinguish between a sale and resale to a homestead, as in Daste, and a sale and resale using a person interposed, as in this case. I would hold the donation of the interest in the Pauline Street property valid for these reasons.
NOTES
[1] 254 La. 403, 223 So.2d 848 (1969).
[2] "Husbands and wives can not give to each other, indirectly, beyond what is permitted by the foregoing dispositions.

"All donations disguised, or made to persons interposed, shall be null and void."
[3] In support of this contention Russo relies on Succession of Hollier, 158 So.2d 351 (La.App.1963).
[4] See for example Succession of Yideau, 197 So.2d 655 (La.App.1967).
[5] See Gregory v. Gregory, 223 So.2d 238 (La.App.1969), and cases cited therein.
[6] 208 So.2d 562 (La.App.1968).
[7] The interest from these separate funds is, of course, community property. Civil Code Article 2386.
[8] 197 So.2d 655 (La.App.1967).
[9] The court cited as authority Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Succession of Geagan, 212 La. 574, 33 So.2d 118 (1947); Succession of Provost, 190 La. 30, 181 So. 802 (1938); Succession of Ferguson, 146 La. 1010, 84 So. 338 (1920); Succession of Bollinger, 30 La.Ann. 193 (1878); Belair v. Dominguez, 26 La.Ann. 605 (1874); and Babin v. Nolan, 6 Rob. 508 (1844).
[1] LSA-C.C. art. 1493 et seq.
[2] LSA-C.C. art. 1754 reads:

"Husbands and wives can not give to each other, indirectly, beyond what is permitted by the foregoing dispositions.
"All donations disguised, or made to persons interposed, shall be null and void."