Barbara BULLOCK

v.

Honorable Edwin EDWARDS, Governor
of the State of Louisiana, et al.

Civ. A. No. 74–3149.

United States District Court,
E. D. Louisiana.

Nov. 11, 1975.

Anita H. Ganucheau, New Orleans, La., for plaintiff.

Louis M. Jones, Asst. Atty. Gen., for defendants, Honorable Edwin Edwards and Honorable William J. Guste, Jr.

Michaelle Pitard, Asst. U. S. Atty., for the United States.

ALVIN B. RUBIN, District Judge.

■ The plaintiff, a married woman, seeks to attack the constitutionality of the part of the Louisiana community property system that, as interpreted by the Louisiana Supreme Court, makes the entire community liable for the male spouse's antenuptial debts but, at the time suit was instituted, protected the community property from liability for the female spouse's separate debts[1] so long as the community existed. The plaintiff and her husband, Jacques Bezou, were married on June 1, 1974. At the time, Mr. Bezou owed a debt for income tax to the federal government. He had a checking account with the International City Bank, with a balance on June 1, 1974, of $943.89. This was of course his separate property.[2] Between June 1 and June 13, 1974, the sum of $330.00 was deposited in this account; these deposits are presumed under Louisiana law to be assets of the community of gains between Mr. Bezou and his wife. La.Civ.Code art. 2405. Withdrawals were also made during this period. On June 13, 1974, when the balance in the account was $625.57, the Internal Revenue Service served a notice of levy against this checking account in the amount of $329.93 to satisfy part of the tax liability. On August 8, 1974, another checking account was opened in the name of the plaintiff's husband; all funds deposited in the account were community funds. While the IRS has allegedly threatened to levy against this account, notice of levy has not at this time been served.

■ The plaintiff attacks both the levy and the alleged imminent levy, claiming that these acts of the IRS have operated to enforce unconstitutional provisions of the Louisiana community property regime. In Louisiana, in the absence of an antenuptial marital agreement making some other disposition, the earnings of both partners to the marriage become community property. However, during the marriage all community assets are part of the husband's patrimony; thus the husband's antenuptial creditors may seize community assets while, prior to 1975, the wife's creditors might not.[3] *Creech v. Capitol Mack, Inc.*, La.1973, 287 So.2d 497. The plaintiff claims that, by affording the

---

1. After suit was filed, the Louisiana Legislature enacted the Louisiana Equal Credit Opportunity Law, La. Acts 1975 No. 705, to make the wife's earnings liable for her separate debts. La.R.S. 9:3584. The plaintiff contends that this does not remedy the alleged denial of equal protection because *all* the community can still be reached to satisfy the male spouse's separate debts while none of the community but the female spouse's earnings is liable for her separate debts. For reasons set forth in the opinion, it is unnecessary to reach this contention.

2. The plaintiff contends that some of this money was hers, deposited in the account before marriage. At the time the two persons were not spouses, so the account could not be community property. The plaintiff

can therefore not complain that the seizure of these funds results from any aspect of the Louisiana community property regime. The bank account might later become community property as a result of later comingling of funds. See, e. g., *Succession of Russo*, La.App. 4th Cir. 1971, 246 So.2d 26; *Succession of Sonnier*, La.App. 3d Cir. 1968, 208 So.2d 562; *Magnolia Petroleum Co. v. Crigler*, La.App. 2d Cir. 1942, 12 So.2d 511. Here, however, we know the exact amount of community funds deposited, $330; a "comingling" that would deprive the remaining funds of their separate character cannot be said to have taken place in this brief twelve-day period.

3. See Note 1, *supra*.

husband's creditors greater rights than creditors of the wife, Louisiana has denied her equal protection of the laws.

## I.  THE THREATENED LEVY

■■ The power of a court of the United States to enjoin attempts by the IRS to collect taxes is circumscribed by Congress.  26 U.S.C. § 7421 provides in pertinent part:

> Except as provided in sections . . . 7426(a) . . . no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The plaintiff seeks to invoke the exception, which as set forth in 26 U.S.C. § 7426(a)(1) provides:

> If a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

As the statute clearly states, the action may be brought only "if a levy has been made."  Before levy, no action lies.  See, e. g., *Hamilton National Bank of Johnson City v. United States*, E.D.Tenn. 1972, 367 F.Supp. 1110, aff'd, 6 Cir. 1973, 486 F.2d 1405; *Standard Acceptance Co. v. United States*, N.D.Ill.1972, 342 F.Supp. 45.  Accordingly, this court is without power to enjoin the threatened levy by the IRS.  It is unnecessary to consider the fact set forth in the plaintiff's brief that she and her husband have now separated, and the account has apparently been dissipated. Nor is it necessary to dwell on the apparent lack of foundation for plaintiff's apprehension; this suit has been pending for over a year since the threat was allegedly made and it has never been carried out or even repeated.

## II.  THE ACTUAL LEVY

■ By constitutional limitation, the jurisdiction of federal courts is restricted to the adjudication of "cases" and "controversies."  U.S.Const. art. III, § 2, cl. 1.  See *Aetna Life Ins. Co. v. Haworth*, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617.  One aspect of this stricture on federal judicial power is the requirement that the legal issues be presented by parties with standing to sue.  *Sierra Club v. Morton*, 1972, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636.  "The party who invokes the power must be able to show," the Supreme Court said in *Frothingham v. Mellon*, 1923, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078, "not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement . . . ."  "The first question," as the Court said in *Association of Data Processing Service Organizations, Inc. v. Camp*, 1970, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184, "is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise."  Thus, unless Ms. Bullock can allege actual damage, real injury in fact, sustained as a result of the levy, this court may not entertain her action.

No part of the sum on deposit at the date of marriage, $943.89, could have been community property, because no community existed at that time.[4]  Despite deposit of the sum of $330.00 into the account after marriage, withdrawals had reduced its balance at the time of seizure to $625.57.  Assuming that all withdrawals related to non-community assets, the assumption most favorable to the plaintiff, $330 is the greatest amount of community funds that could have been on deposit at the time of the debiting of the account.  On that as-

---

4.  See Note 2, *supra*.

sumption, the non-community assets would be $295.57. The seizure, it will be remembered, was $329.93. Ms. Bullock does not claim that she owns or has an interest in the community that exceeds half its gross sum; in the case of this account, her maximum interest could be only the sum of $165. The balance was more than that sum. If the matter be viewed from another aspect, of preserving the entire community intact, and not merely Ms. Bullock's half, the levy invaded the community for the sum of only $34.36.

It is true that the remaining community assets are potentially subject to seizure by Mr. Bezou's antenuptial creditors, if there are any, to the full extent of the community of acquets and gains, and that this seizure could conceivably contribute to an eventual diminution of the community assets to the point where the plaintiff's claims against her husband at the termination of the community cannot be satisfied.[5] This, however, is too conjectural an injury to confer standing; the fact is that the community still had ample financial ability to satisfy Ms. Bullock's rights after the seizure.

The only other injury Ms. Bullock asserts is that her creditors could not reach her community share of the account. She does not show any injury in fact to support this claim. She does not contend that she has creditors who wish to satisfy the indebtedness in this fashion, or that, if she does, their inability to do so constitutes an injury to her. Nor does she contend that her personal credit is damaged by the construction of Louisiana law applied in *Creech*.

If indeed the *Creech* doctrine denies female spouses the equal protection of the laws, we must consider what treatment would make them equal. Ms. Bull-

ock suggests that this is not a matter of concern to the court; it should simply declare an unconstitutional plague on the house of community property, and let the Louisiana Legislature find the nostrum. But this argument pretermits the very point at issue. If the Louisiana law as to seizure of community property is unequal, then it must be made equal. That might be done by forbidding the creditors of either spouse to seize any of the community assets, or by permitting the creditors of both to do so, or by some other plan or formula. Let us look at what would result from applying these physics to the ill at hand: invalidating seizure of the entire community by the husband's creditors would avail Ms. Bullock nothing here because it is evident that only his interest in the community assets has been seized. Allowing the wife's creditors to reach community funds would not prevent the husband's creditors from doing so. Invalidating any seizure of community funds by the creditor of either spouse—an insulation no one has suggested—would invaliate the seizure here only for the $34.36 explained above, an amount that is minimal, indeed de minimis.

This analysis of possible remedies does not of course demonstrate lack of standing to sue; but it does suggest that this litigation does not truly seek an equality of creditors' rights to the amount in the bank, but that the levy is drawn in question merely as the platform by which an attack on the community property system can be launched.

Louisiana's community property system was in existence before the Louisiana Purchase in 1803. It is a complex structure; indeed it is referred to not as a statute or a system, but a *regime*. The spouses may, prior to marriage, elect another form of matrimonial prop-

---

5. Article 2403 of the Louisiana Civil Code provides, "[T]he debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects." Thus, at the termination of the community, if separate debts of the hus-

band have been satisfied with community assets, the wife must be reimbursed from the separate property of the husband or his half of the community. See *Creech v. Capitol Mack, supra.*

erty regime. If they do not do so, and if they do not modify the community regime by an antenuptial contract, its provisions operate to make the husband's earnings as well as the wife's the joint property of the spouses. Revenues from the husband's separate property also become part of the joint fund; income from the wife's does not.[6] The system is closely related to other areas of the law, such as the law of successions. See La.Civ.Code arts. 915, 916, 917. These and other facets of the system of matrimonial property sharing have been discussed at length elsewhere.[7]

 What is attacked here is only a part of that pattern. While mere antiquity and complexity do not ordain constitutionality, they do indicate that an attack on one part of a long used and integral structure should be carefully considered. It is obviously difficult to consider the validity of a part of the community system in isolation. If the constitutionality of that part, or of the whole, is to be considered, then the litigant raising the issue should have a direct material interest in the outcome of the suit. Real parties in interest, the male spouse and the female spouse's creditors, are not now before the court. Nor is there any dispute between the parties before the court as to whether the wife's creditors might seize community assets. The Louisiana officials joined in this suit have no direct interest in its outcome; they were joined merely because the validity of a Louisiana statute has been drawn in question.[8] We lack here both a direct injury to the plaintiff and a defendant with a real interest in controverting her claims.

The character of the issues here raised, the parties against whom they are presented, and the scope of the plaintiff's claim are all peripheral. But they do help us focus once again on the central point; the plaintiff does not in this particular case have a direct economic interest adverse to the defendants sued, nor has she demonstrated injury in fact as a result of their actions. She therefore lacks standing to sue.

Accordingly, the government's motion for summary judgment is granted and the plaintiff's case is hereby dismissed.

---

6. This is true only if the wife has filed an instrument declaring her intention to administer her separate property and that she reserves the fruits to her separate use. Otherwise, this income falls into the community of gains. La.Civ.Code art. 2386.

7. See, e. g., *Creech v. Capitol Mack, Inc.*, *supra*; Pugh, The Spanish Community of Gains in 1803; Sociedad de Gananciales, 30 La.L.Rev. 1 (1969).

8. In an opinion dated June 20, 1975, the court granted the defendants' motion to dissolve the three-judge-court originally convened, on the basis that these defendants are not charged with enforcement of the provisions in question, and therefore no injunction could be issued against them.