376 So.2d 486 (1979)
Sidney COSEY, Jr.
v.
Lillian Jonpierre Tyler COSEY.
No. 63644.
Supreme Court of Louisiana.
May 21, 1979.
On Rehearing November 1, 1979.
Ernest G. Drake, Jr., Pierson, Drake & Scott, Ponchatoula, for plaintiff-applicant.
Iddo Pittman, Jr., Pittman & Matheny, Hammond, for defendant-respondent.
CALOGERO, Justice.[*]
This litigation involves a contest over the ownership of eleven acres of land in Tangipahoa Parish.[1] Plaintiff, Sidney Cosey, Jr., is the only child and sole heir of Sidney Cosey, Sr. and the latter's first wife, Hattie Harris Cosey. Defendant is Sidney Cosey, Sr.'s second wife Lillian Jonpierre Tyler Cosey.[2] The property, earlier the subject of a bond for deed contract entitled "Articles of Agreement," was conveyed to Cosey, Sr. and Lillian during Cosey Sr.'s second marriage for a stated cash consideration of $825.00.[3] Because plaintiff alleged and *487 proved[4] that his father received possession of the property upon execution of the bond for deed contract in 1945 and concluded payment of the full purchase price before his divorce from plaintiff's mother,[5] the trial court found the property to belong exclusively to the estates of Hattie and Sidney Cosey, Sr., found that Lillian had no interest in the property, and rendered judgment in favor of plaintiff.
The Court of Appeal reversed, concluding that the acquisition of the property by the act of cash sale occurred during Cosey, Sr.'s second marriage to Lillian and that the property thus belonged to the second community, between Cosey, Sr. and Lillian.
The Court of Appeal concluded that a bond for deed contract is not a sale; that title is not transferred thereby even when final payment is made according to the contract's terms; that acquisition "by purchase"[6] took place during the second community when the cash sale was executed; and that the property thus belonged to the second community.
To support those conclusions, the Court of Appeal relied primarily upon Kendall v. Kendall, 174 La. 148, 140 So. 6 (1932) which held that although the bond for deed was executed and most of the payments were made during one community, the property belonged to a later community during which title to the property was acquired by act of sale.
Because the entire purchase price in this case was paid during the existence of the first community, we felt that Kendall was distinguishable and that this case warranted careful consideration of the possibility that the property, at least with respect to the right to ownership, was acquired during the first community upon payment of the full purchase price. It was for this reason that we granted writs. Cosey v. Cosey, 366 So.2d 570 (La.1979).
Upon review, however, we conclude that the case should be resolved, and the Court of Appeal judgment in favor of the defendant affirmed, without reaching this legal question.[7] The only really relevant issue in this case is whether plaintiff's attempt to divest defendant of the undivided one-half interest she acquired by authentic act, by production of evidence over defendant's objection, offends the public records doctrine.
Before Lillian acquired title to the property by the act of sale, the title was in the name of the vendor, the C. E. Cate Estate. There were no encumbrances recorded against the property; nor was the bond for deed contract, executed during the first community, recorded.[8]
A fundamental principle of Louisiana law is that interests in immovable property must be recorded to affect third persons. La.Civ.Code art. 2264;[9] La.Civ.Code art. *488 2266;[10]McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). Consequently, an unrecorded bond for deed contract, which is essentially a contract to sell real property,[11] is considered null except as between the parties thereto. Third parties are affected only from and after the time of recordation. Because the bond for deed contract which might have protected Hattie's possible interest in the property at issue was not recorded, Lillian (who was a third party to the bond for deed contract between the Cate Estate and Sidney Cosey, Sr.) acquired the property (an undivided one-half interest) free from the interest Hattie (and/or Sidney, as head and master of the first community) may have had. Even if we assume that Hattie had some character of right to receive an undivided one-half interest in the property at the time the final payment was made, the fact that the bond for deed contract was unrecorded precludes her assertion of this right after Lillian acquired title to the property by authentic act.
Plaintiff's attempt to prove Hattie's right to the property by parol evidence, over defendant's objection, also violates a fundamental principle of Louisiana law. Authentic acts are full proof of the agreement contained therein and can not be attacked by parole evidence in the absence of fraud, error, counter-letter, or admission of facts to the contrary made by the parties thereto. Morrison v. Richards, 343 So.2d 375 (La. App. 4th Cir. 1977); Miles v. Miles, 328 So.2d 394 (La.App. 3rd Cir. 1975). In the instant case, the authentic act naming Lillian Jonpierre Tyler Cosey as the co-owner of the property did not result from error, as plaintiff argues. The evidence simply does not so preponderate. Because Cosey, Sr. (and defendant Lillian as well, so far as this record shows) intended that defendant's name be placed on the deed as co-owner of the property, there was no "error" in this case. It is well-established in Louisiana jurisprudence that parol evidence is inadmissible to create title in one who never owned the land, or to show that the vendee was in reality someone other than the one named in the deed. Ceromi v. Harris, 187 La. 701, 175 So. 462 (1937); Haney v. Dunn, 96 So.2d 243 (La.App. 1st Cir. 1957). Consequently, Hattie's right, if any, to a half interest in the property can not be established by parol evidence when the authentic act indicates that Lillian for a stated cash consideration acquired the property as a co-owner.
Plaintiff's major argument in brief, which was accepted by the trial court, is that because the entire purchase price was paid from funds belonging to the first community, the Cate Estate had no obligation to convey an interest in the property to defendant and that defendant therefore acquired her undivided one-half interest without a lawful cause. Plaintiff contends that because defendant received property "not due" her, she is obligated under Articles 2301 and 2312[12] of the Civil Code to restore it.
The right to obtain restitution as provided by Article 2301 (an action sometimes referred to as an action in repetition, or by *489 its Roman name, condictio indebiti) is derived from a special quasi-contract which results when one party, knowingly or mistakenly, receives something which is not owed to him. Litvinoff, Louisiana Civil Law Treatise, Obligations, Vol. 7, Book 2, § 255, p. 483. Under Article 2301 the recipient is bound to restore the thing he has received to the one from whom he has received it. As explained by Planiol, the right to obtain repetition, or restitution, arises, at least in one situation, when there is no obligation between the person who pays and the person paid. For example, a debtor may demand restitution when he makes payment to one other than his true creditor. Planiol, Treatise on Civil Law, Vol. 2, Part 1, § 839, p. 450 (La.St.L.Inst. Transl.1959). Plaintiff argues that because the Cate Estate (the debtor) paid a debt (the obligation to convey title to the property) to one (defendant) other than his true creditor (the community between Cosey, Sr. and Hattie), he (the sole heir of Cosey, Sr. and Hattie) has a right to demand that he recover the property.
Whatever may be the right to restitution in this case, it is clear that the plaintiff is not the proper party to demand it. The obligation created by Article 2301 is to restore the thing paid to the party "from whom he has unduly received it." The right to demand restitution, therefore, accrues only to the party who has paid the obligation. See Planiol, supra, 859A, p. 457.[13] The right to demand restitution, if there exists any such right at all, belongs exclusively to the Cate Estate.

Decree
For all the foregoing reasons, plaintiff has not proved his entitlement, or that of the estate of his deceased mother, to Lillian's interest in the disputed property. The trial court was in error in finding otherwise and the Court of Appeal correct in reaching a result favorable to defendant.
The judgment of the Court of Appeal is therefore affirmed.
AFFIRMED.
REDMANN, J. Ad Hoc, dissents and assigns written reasons.
BLANCHE, J., recused.
REDMANN, Justice Ad Hoc, dissenting.
The 1962 notarial deed from the Cate heirs to Sidney and Lillian Cosey is not signed by either Sidney or Lillian. That deed is therefore neither the authentic act, La.C.C. 2234, nor the act under private signature, C.C. 2235, of either Sidney or Lillian.
The parol evidence exclusionary rule, C.C. 2276, 2236 and 2238, therefore has no application to Sidney or Lillian. Sidney himself could have introduced parol to correct any error in the deed, and his heir has the same right.[1] Parol establishes that the cause of the Cate heirs' conveying title by the 1962 deed was not $825 cash then paid but a pre-existing obligation to execute a deed, resulting from a 1945 bond for deed contract with Sidney, of which Sidney had fully performed his part prior to his marriage to Lillian.
The unrecorded act exclusionary rule, the "public records doctrine" of C.C. 2264 and 2266, is also inapplicable, because Lillian is not a "third person" relying on the public records, against whom an unrecorded act is "utterly null and void". If Lillian's being made a co-grantee is not a simple mistake, *490 then her right must be that of donee (or, by pure speculation, vendee) of half of Sidney's entitlement under the unrecorded but fully paid bond for deed contract, and she is therefore a successor party to that contract, unable to plead its non-recordation.
By the testimony of the notary (a secretary in the Cate estate office) to the effect that she had neither recollection nor record in her file on the matter of any special instructions from Sidney but merely asked for his marital status; by the deed's erroneous recital that Sidney was married but once; by the June 1961 acknowledgment of the Cate estate "manager" that a deed was owed "to Sidney Cosey" and was being delayed only by the death of a Cate heir; by Sidney's apparent illiteracy, negating an inference from his silence upon receiving (if he did) a copy of the deed to himself and Lillian: by all of these circumstances taken together, Sidney's heir has proved, as more probable than not, Boudreaux v. American Ins. Co., 1972, 262 La. 721, 264 So.2d 621, that Lillian was included as a grantee by simple mistake of the secretary-notary.[2] Sidney was entitled to have that mistake corrected, and so is his heir.[3]

ON REHEARING
SUMMERS, Chief Justice.[*]
Sidney Cosey was married to Hattie Harris Cosey on November 14, 1915. Only one child, a son, Sidney Cosey, Jr., was born of this union. About the year 1935 Sidney and Hattie separated and ceased to live together. No action to obtain a judicial separation was taken by either party. They were never reconciled.
On March 18, 1945 Sidney entered into a bond for deed contract with the C.E. Cates Estate. By this contract the Cates Estate agreed "to convey and assure to . . . [Sidney], in fee simple, clear of all encumbrances whatever, by a good and sufficient Warranty Deed" an eleven-acre tract of land in Tangipahoa Parish, upon payment by Sidney of $825 in stipulated installments. The bond for deed was not recorded in the public records of Tangipahoa Parish.
On May 25, 1961 Sidney made the last payment due on the bond for deed contract. However, because of the death of one of the co-owners of the eleven-acre tract of land, the Cates Estate was not then able to deliver title.
Thereafter, on May 28, 1962, Sidney and Hattie were divorced, and on June 10, 1962 Sidney married Lillian Jonpierre Tyler.
Then, on December 7, 1962, the Cates Estate transferred the eleven-acre tract to "Sidney and Lillian Cosey once married and living together." Neither Sidney nor Lillian signed this deed. The deed was duly *491 recorded in the public records of Tangipahoa Parish.
Hattie died on December 27, 1964 and Sidney died on August 29, 1976, survived by their only child Sidney, Jr. The elder Sidney was also survived by his second wife Lillian. Sidney, Jr., opened the successions of his father, Sidney, and his mother, Hattie, and qualified as administrator on November 5, 1976.
This suit was instituted by Sidney, Jr., as administrator of the successions of his father and mother as their sole and only heir against Lillian and the owners of the Cates Estate. He seeks thereby to obtain judgment in his favor decreeing that the eleven-acre tract of land belongs to the community of acquets and gains formerly existing between his father and mother.
The trial court observed that there were no witnesses on behalf of Lillian, nor did she allege or prove any obligation, civil or natural, owed to her by the Cates Estate or by Sidney, Jr. In the opinion of the trial judge Lillian's claim to one-half of the eleven acres of land arose solely through error on the part of the notary public who prepared the deed naming her with her husband as joint purchasers of the property. The error was due to the nineteen-month delay between the final payment on May 25, 1961 and the execution of the deed on December 7, 1961 made necessary by the death of one of the vendors.
Thus, the court concluded, Lillian was named as purchaser though she had no claim to the property because all funds used to pay for the property were those belonging to the first community. Having received property not due her, the court held, Lillian was bound by the provisions of Article 2301 "to restore it to him from whom [s]he has unduly received it." Further reliance was placed upon Article 2312 of the Civil Code and the decision in Arkansas Fuel Oil Co. v. Williams, 183 So. 128 (La. App.1938).
Lillian appealed to the First Circuit where the judgment of the trial court was reversed. The Court of Appeal based its decision on Article 2402 of the Civil Code and our decision in Kendall v. Kendall, 174 La. 148, 140 So. 6 (1932). These authorities, the court found, stood for the proposition that for real property to be classified as community property there must be an act of sale transferring title and not merely an agreement to sell. Consequently, because a bond for deed was not a sale title was not transferred thereby. As a result the court recognized Lillian to be the owner of one-half of the property.
Writs were granted on Sidney, Jr.'s application. Because the deed from the Cates Estate is not signed by Sidney or Lillian it is not their authentic act, La.Civil Code art. 2234, or their act under private signature, La.Civil Code art. 2235. The parol evidence exclusionary rule, therefore, cannot be invoked against them. La.Civil Code arts. 2236, 2238 and 2276. Sidney himself could have introduced parol evidence to correct any error in the deed, and his heir has the same right. Sidney, Jr., therefore, may question the validity of that deed by parol.
There is persuasive evidence in the record that inserting Lillian's name in the deed as purchaser was a mistake. The deed was prepared by the Cates Estate secretary who was not a lawyer and whose experience in such matters was limited to the affairs of her employer. As a result her inquiry into Sidney Cosey's marital status was perfunctory. She did not ascertain that he was married twice inserting the name of the purchaser in the deed as "Sidney and Lillian Cosey once married and living together." (emphasis added).
Another circumstance of importance is that full payment under the bond for deed contract occurred during the existence of the first community. Only the death of one of the owners in the Cates Estate delayed the delivery of the deed to the elder Sidney. And shortly after the last payment the manager of the Cates Estate inserted a letter dated June 23, 1961 in Sidney's file stating that the purchase price had been paid in full for the property and a deed could not be issued because of the death of *492 a member of the Cates Estate. When the affairs of the deceased member were in order, the letter continued, the deed would be issued to Sidney. Nineteen months later after Sidney and Harriet were divorced and Sidney had married Lillian the deed was executed by the vendors, apparently without sufficient consultation with Sidney. The half interest claimed by Lillian was therefore in fact the half interest belonging to Harriet. The delay, together with the notary's inexperience and limited knowledge of the law, was responsible for the inclusion of Lillian's name in the deed instead of Harriet's. It may be inferred also that Sidney was illiterate and it may not be presumed that he acquiesced in the implications of the deed when he received it.
As previously noted, Lillian did not testify and no witnesses testified on her behalf. There is, moreover, no evidence to support a conclusion that the elder Sidney intended that Lillian should share in this property at the termination of their marriage and the dissolution of the community or that Lillian realized that she had acquired an interest by virtue of her rights in the community.
We agree with the trial court that Lillian "received" her interest in the property through error. The community existing between her and Sidney made no contribution whatever toward acquisition of the property. She had no claim to the interest which was "not due her", and for that reason she is obliged "to restore it to him from whom [s]he has unduly received it," as required by Article 2301 of the Civil Code in these terms: "He who receives what is not due him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it." Article 2312 explains the principle further, assuring its applicability to immovables:
"If the thing unduly received is an immovable property or a corporeal movable, he who has received it, is bound to restore it in kind, if it remain, or its value, if it be destroyed or injured by his fault; he is even answerable for its loss by fortuitous event, if he has received it in bad faith."
The remedy granted by these articles is based upon equitable principles applicable to the errors which provoked this litigation.
For the reasons assigned, it is ordered, adjudged and decreed that the decedents Sidney Cosey and Harriet Harris were, at the time of their death, the owners in indivision, in the proportion of an undivided one-half to each, of the following described property, to-wit:
All that property lying east of the drainage canal in the south half of the southeast quarter of the northeast quarter of Section 29, T6S, R8E, Tangipahoa Parish, Louisiana, less 25 feet along the east boundary for public road, containing 11 acres more or less.
All costs of these proceedings to be paid by defendants.
Marcus, J., dissents, adhering to the original opinion of this court.
NOTES
[*] Judge William V. Redmann, Louisiana Court of Appeal, Fourth Circuit, participated in this decision in place of Associate Justice Fred A. Blanche, Jr., recused.
[1] In a sworn descriptive list of succession property filed in 1976, the property is valued at $10,000.
[2] For brevity Sidney Cosey, Sr. will hereinafter be referred to as Cosey, Sr. and Hattie Harris Cosey as Hattie. Plaintiff will be referred to alternately as plaintiff and Cosey, Jr., while defendant will be referred to alternately as defendant and Lillian.
[3] The pertinent facts in this case in chronological order are as follows: Cosey, Sr. and Hattie were married in 1915; Cosey, Jr. was born in 1916; Cosey, Sr. and Hattie became separated in 1935. Cosey, Sr. received the property and entered into the Bond for Deed contract March 18, 1945; concluding payment on the $825.00 purchase price was made May 25, 1961; Cosey, Sr. and Hattie were divorced May 28, 1962; Cosey, Sr. and Lillian were married June 10, 1962; the authentic act of cash sale to the involved property to Cosey, Sr., and Lillian was executed December 7, 1962; Hattie died December 27, 1964; Cosey, Sr. died August 29, 1976.
[4] Plaintiff proved these facts over defendant's continuing objection to the introduction of any evidence which would tend to change or deviate from the authentic act.
[5] Delay in execution of the act of sale from May 25, 1961, date of the concluding payment, until December 7, 1962 was caused by the death of one of the vendors and the need to conduct that vendor's succession in California.
[6] La.Civ.Code art. 2402 provides that the community consists of the estate which the husband and wife may acquire during the marriage "by purchase, or in any other similar way."
[7] Insofar as plaintiff's right to his father's undivided one-half interest in the property is concerned, the issue of whether the acquisition of the property took place upon final payment on the bond for deed or upon execution of the act of sale is irrelevant, for in either case, plaintiff inherits that interest as Cosey, Sr.'s legal heir. That result is unaffected by the result reached here.
[8] Although there are no Louisiana cases on point, it would appear that if a bond for deed were recorded and the property were sold to a third person, the party who was to purchase under the contract could bring a possessory or petitory action (depending on whether he was in possession of the property) upon final payment. See Comment, "Bond for Deed Contracts," 31 La.L.Rev. 587, 592 (1971).
[9] La.Civ.Code art. 2264 provides:

"No notarial act concerning immovable property shall have any effect against third persons, until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated."
[10] La.Civ.Code art. 2266 provides:

"All sales, contracts, and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer."
[11] R.S. 9:2941 defines the bond for deed contract as:

"[a] contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer."
[12] La.Civ.Code art. 2301 provides:

"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
La.Civ.Code art. 2312 provides:
"If the thing unduly received is an immovable property or a corporeal movable, he who has received it, is bound to restore it in kind, if it remain, or its value, if it be destroyed or injured by his fault; he is even answerable for its loss by fortuitous event, if he has received it in bad faith."
[13] The conclusion reached here is supported by Planiol who observes as follows: "The jurisprudence after some indecision (citations omitted) has decided that the direct action [by the creditor of the payor] is inadmissible, the receiver not being held except by reason of the fact of payment, and then only towards the payer (citations omitted)." Planiol, supra, at 458.
[1] Because plaintiff is Sidney's forced heir, he further has the right to annul by parol any simulation by his father, C.C. 2239, and the right to reduction of any excessive donation by his father, C.C. 1502. If the property were community of the first marriage (a question this opinion deems unnecessary to address), the son would have to show that the father's donation of his half to his second wife exceeded the disposable portion of his entire estate. No such showing is attempted. (See also C.C. 1900, on parol to show "consideration.")
[2] The possibility that Sidney wanted his new wife, Lillian, to have a half interest in the property and requested of the Cate heirs a deed in both names is so remote, on this record (compare Succession of Daste, 1969, 254 La. 403, 223 So.2d 848), it scarce deserves discussion. Any such intended donation by Sidney, however, would not meet C.C. 1536's requirement of a notarial act (by the donor, of course) for a donation "of immovable property or incorporeal things, . . . under the penalty of nullity."

This opinion does not consider the implications of Sidney's heir's testimony that, shortly after Sidney and his first wife separated in 1935 (or earlier), Sidney began living with another womantestimony halted by objection by Lillian's counseland the fact that Lillian testified at Sidney's 1962 divorce that she knew of her own knowledge that Sidney and the first wife had not reconciled in over 25 years.
[3] Ordinarily the obligation to restore a thing unduly received is owed to the person from whom it was received, C.C. 2301. But Sidney (or his heir) was entitled to demand of the Cate heirs that they convey title to him alone and thus entitled to enjoin them to exercise (if need be) their right to obtain restitution from Lillian of the property mistakenly conveyed to her. Under the circumstances of this case, however, the suggestion that Sidney's heir should sue the Cate heirs to make them sue Lillian seems to invite circuitous, multiple litigation without any clear necessity. La.C.C.P. 2164 authorizes, on this record, a judgment accomplishing in one step the "restitution" from Lillian to the Cate heirs and their obligatory conveyance to Sidney: more simply, a judgment reforming the 1962 deed in which the Cate heirs have no real interest.
[*] Judge William V. Redmann is sitting by Assignment as Associate Justice Ad Hoc in place of Blanche, J., upon this case.