PETTIGREW, J.
| aThis matter arises out of a family dispute involving the Estate of Vic Reno (“the decedent”). Joshua Fontenot (“Joshua”), the grandson of the decedent, appeals the district court’s denial of his petition to *413 vacate and/or annul a judgment that appointed James R. Reno (“Jimmy”), the son of the decedent, as succession administrator.
BACKGROUND FACTS AND PROCEDURAL HISTORY
The decedent died on November 25, 2012. Approximately two months after the death of the decedent, on February 6, 2013, Jimmy filed a Petition for Appointment as Provisional Administrator of the estate, alleging that since the time of decedent’s death, no person had made application for appointment as the succession representative. Jimmy represented that he and Tammi Reno Bourque are the surviving children of the decedent, Dorothy La-batut Reno (“Mrs. Reno”) is the surviving spouse, and Joshua is one of the decedent’s grandchildren. Jimmy further asserted that he had been informed of the existence of a purported Last Will and Testament by the decedent, dated July 7, 2011, granting naked ownership of the decedent’s entire estate to his grandson, Joshua, and a usu-fruct of his estate to Mrs. Reno, to the exclusion of the decedent’s children and other grandchildren. He also noted that the July 7, 2011 will did not name an executor for the succession.
Jimmy further alleged his anticipation that members of the Reno family would challenge that will on the grounds of incapacity of the decedent and undue influence on the part of Joshua. Jimmy stated that, by virtue of the purported will, Joshua and Mrs. Reno were in possession of the property of the estate, and had the power to conceal, dispose of, or waste that property, and the appointment of a provisional administrator was necessary to safeguard the estate. Jimmy asserted he was qualified to serve in that capacity, pursuant to La. C.C.P. art. 3111 [1] which grants such right to “an interested | -¡party.” He-claimed he was an “interested party” due to the existence of a prior last will and testament executed by the decedent, dated December 7, 2007, in which Jimmy was a legatee. Further, Jimmy claimed that he would be an heir, abseht a valid last will and testa-, ment. .
Jimmy was appointed Provisional Administrator by order of the court, dated February 6, 2013, which also ordered him to furnish bond in the amount of $250,000.00 and to file an inventory or detailed descriptive list of all- assets, of the estate. Jimmy'posted the bond, and letters of administration were issued. Shortly thereafter, on February 28, 2013, Jimmy filed a Petition for Appointment of Notary Public, alleging that his attempts to fulfill his duties as administrator (to gather, preserve, and safeguard the assets of the succession) were being thwarted by Mrs. Reno and Joshua, who were in possession and control of the house where the decedent had lived and would not consent to a search by him, nor would they allow him to take possession of anything found that is believed to be property of the succession. In particular, Jimmy alleged that the decedent historically kept a safe at the house, containing large sums of cash, other valuables, and potentially, the testaments by the decedent[2], and that the decedent also *414 kept a large quantity of guns in the house. Noting that Mrs. Reno and Joshua had the power to conceal, dispose of, or waste the property of the succession, and asserting that any efforts to make such inventory of decedent’s property would be met with animosity and physical resistance, Jimmy sought a court order appointing a notary public, directing a search of the home by the notary, accompanied by Jimmy and the Sheriff of East Baton Rouge Parish. An order granting such relief was signed by the district court on February 28, 2013. (An amending request was also granted on March 5, | ,t2013, appointing a Notary Public, and directing the notary to conduct an inventory, accompanied by Jimmy, of the decedent’s safety deposit box at Whitney Bank.)
Also, on March 5, 2013, Jimmy filed a Petition for Appointment of Administrator, representing that no one had applied for appointment as succession representative and that his appointment as full administrator was necessary to authorize him to take action required for the administration of the succession, in particular to make payments of the expenses related thereto, and to collect, preserve, and manage the assets of the estate. Jimmy was appointed full administrator by order of the court, dated March 5, 2013.
On April 30, 2013, Mrs. Reno filed a Petition for Removal of Provisional Administrator based on a pending suit in which Jimmy and the decedent were named defendants, allegedly arising from Jimmy’s refusal to pay for mechanical work ordered by the decedent involving R-Square Investments, LLC. According to Mrs. Reno, that suit constituted an actual conflict of interest warranting the removal of Jimmy as administrator of the succession. She requested that Jimmy be removed, and that she and Joshua (as legatees of the will dated July 7, 2011) be given the opportunity to qualify for administrator or, in the alternative, that an independent administrator be appointed. (As noted below, on the date of the hearing on this petition, Mrs. Reno voluntarily dismissed, with prejudice, her petition seeking removal of Jimmy as provisional administrator.)
On July 8, 2013, Mrs. Reno filed a petition to probate the decedent’s statutory testament dated July 7, 2011; a copy of said testament was attached' to her petition.
On July 18, 2013, Joshua filed a “Petition to Vacate and/or Anul (sic) Judgment,” alleging that Jimmy, in seeking his appointment as administrator, had committed acts of “fraud and ill practice,” as contemplated by La. C.C.P. art. 2004. On that basis, Joshua sought to vacate or annul the orders of February 6, 2013 and March [5], 2013 appointing Jimmy as administrator of the succession.[3]
On July 19, 2013, the date of the hearing on the above referenced petition to vacate and/or annul, the parties (Jimmy, Mrs. Reno, and Joshua) entered into a consent | ¿judgment, signed by the district court on July 24, 2013, ordering Whitney Bank to deliver to Mrs. Reno the amount of $30,000.00 as a “periodic allowance” from *415 one of the accounts included in the succession. On that same date, Mrs. Reno, by oral motion, withdrew her petition for removal of Jimmy as provisional administrator; a judgment of dismissal with prejudice was signed on July 26, 2013. Notably, became the petition for removal of the succession administrator toas withdrawn by Mrs. Reno, it ivas not heard by the district court, and therefore, is not before this court.
Also, on July 19, 2013, the district court rendered a judgment (also signed oh July 26, 2013) denying the petition to vacate and/or annul the March 5, 2013 order appointing Jimmy as succession administrator. The July 26, 2013 written judgment denying the Petition to Vacate and/or Annul Judgment was appealed by Joshua and is the matter before us at this time.
MOTION TO DISMISS
Also before us is a Motion to Dismiss the appeal, filed by Jimmy, claiming the judgment being appealed is not an appealable judgment. Notably, despite the parties’ arguments to the contrary, this is not an appeal of any judgment concerning the motion to remove the succession administrator. That motion was withdrawn by Mrs. Reno at the hearing before the district court on July 19, 2013. Thus, it was never heard by the district court; a judgment to dismiss based upon her motion to withdraw was signed on July 26, 2013; therefore, that motion is not before us.
The judgment before us is the July 26, 2013 denial of Joshua’s petition to vacate and/or annul the judgments (orders) of the district court appointing Jimmy as succession administrator. The basis for the request to annul, asserted in that petition as well as in the memorandum submitted in support thereof, was that certain actions by Jimmy constituted fraud and ill practice, pursuant to La. C.C.P. art. 2004. That article allows the annulment of a final judgment that has been obtained by fraud or ill practices.
We are aware of our ruling in Succession of LeBouef, 2013-0209 (La.App. 1 Cir. 9/9/14), 153 So.3d 527, 533, to the effect that appeals are allowed’of judgments appointing or removing a succession representative. However, this is not an appeal of |fithe district court’s order appointing Jimmy as succession administrator. That order was dated March 5, 2013, and no appeal was sought from that ruling. Moreover, our ruling in LeBouef was based on a finding that judgments appointing or removing a succession administrator were appealable pursuant to La. C.C.P. art. 2083, because such right to appeal was given by law. We held that the provisions of law giving such right of appeal were La. C.C.P. art. 2122 and La. C.C.P. art. 2974. Article 2122 provides that a judgment or order of a trial court appointing or removing a legal representative shall be executed provisionally notwithstanding an appeal therefrom. Article 2974 provides that appeals' from orders or judgments rendered in succession proceedings shall be governed by the rules' applicable to appeals in ordinary proceedings, except that an order or judgment confirming, appointing; or removing a succession representative shall be executed provisionally, notwithstanding appeal. Because'both articles referenced an appeal in conjunction with the appointment or removal of a succession representative, we concluded that, pursuant to La. C.C.P. art. 2083; the right to appeal such orders was given by law. Notably, our ruling on the appealability of those orders was not based on a finding that those orders were “final appealable judgments.” Nor is the analysis employed by us in LeBouef applicable to this appeal of a judgment ■ denying a petition to annul *416 based on fraud and ill practices pursuant to La. C.C.P. art: 2004.
A judgment that does not determine the merits but only preliminary matters in the course of the action' is an interlocutory judgment.. A judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841; see also In re Succession of McLean, 2009-1851, 2010 WL 2342752 (La.App. 1 Cir. 6/11/10) (unpublished opinion.) The issue in McLean was whether the denial of plaintiffs motion to annul a probated testament was appealable. In finding that it was appeal-able, this court stated, “the judgment denying the rule to annul fully determined the merits of the plaintiff’s claim that her late husband lacked the capacity to make-a will at the time he signed the 2008 testament. ... [Bjecause the May 21, 2009, judgment disposed of all of the issues in controversy presented within the context of the rule to annul, it is a final, appealable judgment.” McLean, 2009-1851 at p, 2. (Emphasis added.) In footnote one, we not-edJjjthat “[ajlthough the judgment’on the rule to annul did not conclude the succession proceeding and the legatees have not been placed in possession, such relief is part of the principal succession proceeding rather than the action to annul.” In the case before us, although there are several remaining pending motions, the judgment denying the petition to annul was based on the district court’s finding that, the mover, Joshua, had failed to prove that any acts by Jimmy, as administrator of the estate, consisted of “fraud or ill practices.” Thus, because that judgment disposed of all of the issues in controversy within the context of the petition to annul, it is a final appealable judgment.
Additionally, we note that in Succession of Price, 196 La. 172, 198 So. 894 (La.1940), the Supreme Court was faced with a motion to dismiss the appeal from the denial of a rule (filed by certain legatees) seeking to annul inventories made in a succession by testamentary executors. The rule had been dismissed on an exception of no cause of action, and the initial issue before the Supreme Court was a motion to dismiss the appeal, based on allegations by the executors that the denial of their rule to annul was an interlocutory decree and not a final judgment. The Supreme Court concluded that the district court’s denial of the rule seeking an annulment of the inventories was conclusive of the rights claimed and the issues raised in the proceedings. As such, the Court held that the judgment was a final judgment, definitive of all the claims before it, and that the appellants had a right to appeal said final judgment.. Id. at p. 180, 198 So. 894. Similarly, in the instant case, the district court’s denial of the motion to annul the appointment -of Jimmy as succession administrator resolved all of the issues raised by Joshua’s allegations that the appointment was acquired through fraud and ill practices on the part of Jimmy; the district court found that there was insufficient evidence to support those claims; and the judgment refusing to annul the appointment is a final and appeal-able judgment.
Accordingly, the motion to dismiss is denied. The judgment denying the motion to annul the appointment of Jimmy as succession administrator is a final appeal-able judgment.
| «THE APPEAL
At the inception of this discussion, we note that Joshua’s sole assignment of error pertains to issues related to Jimmy’s appointment as succession administrator, including claims that there was no need for administration; that Jimmy was not qualified; that his application was self-serving and demonstrated an unresolved conflict *417 with the heirs (Joshua, himself, and Mrs. Reno) named in the purported will executed July 7, 2011; that Jimmy claimed to be an heir in a 2007 testament that has yet to be produced; that the succession was relatively debt free; and that Jimmy’s actions in seeking appointment are not in the .best interests of Joshua and Mrs. Reno (as heirs of the alleged July 2011 will). Based on these claims, Joshua argues on appeal that the district court erred in denying his motion to remove Jimmy as administrator.
The major fallacy in Joshua’s claims is that the motion to remove Jimmy as administrator was filed by Mrs. Reno, and withdrawn by her prior to the hearing. A judgment of dismissal of that motion was rendered based on her withdrawal, and was never ruled on by the district court. Moreover, and as previously noted, neither Joshua nor Mrs. Reno timely challenged the appointment of Jimmy as succession administrator. In support of these arguments, Joshua, on appeal, relied on La. C.C.P. arts. 3182 and 3097. These articles pertain to the requirements necessary for the appointment of a succession administrator, with no méntion of fraud and ill practices, which is the basis of Joshua’s motion to annul pursuant to La. C.C. art. 2004. Therefore, all issues concerning his qualifications and the other issues raised by Joshua as part of his assignment of. error, are simply not before this, court at this time.
Rather, the appeal by Joshua is of the judgment denying the petition to annul the appointment. The basis for Joshua’s petition to annul consisted of allegations that Jimmy obtained the appointment by fraud or ill practices as contemplated by La. C.C.P. art. 2004, which provides that a final judgment obtained by fraud or ill practices may be annulled. Therefore, the only issue properly before this court .on appeal is whether the district court abused its discretion in denying Joshua’s petition to annul the order of 19appointment based on its finding Joshua failed to prove that Jimmy’s appointment is annullable due to fraud or ill practices.
In that regard, Joshua' argues that Jimmy has claimed that there would be challenges to the July 2011 testament, but that no such challenges have been made. Additionally, Joshua notes that Jimmy claims the existence of a 2007 will, but that no such will has been produced. Further, on appeal, Joshua claims that Jimmy has failed to present any evidence of the undue influence and lack of capacity on which he asserts the July 2011 will is invalid.
Again, that evidence is not applicable to the motion to annul for fraud and ill practice; rather, it is appropriately raised, in the hearing to probate the 2011 will. The record reveals that Mrs. Reno has filed a petition to probate the 2011 testament, and that petition remains pending and a hearing thereon has not yet been set. Any challenges to that will would properly be raised at the time of the hearing to probate that will, and Jimmy is under no obligation to raise any such challenge prior to that time. The record also reveals that Jimmy has been met with resistance from Joshua and Mrs. Reno in his attempts to locate the will as well as the assets that comprise the estate. Indeed, the record reveals that Jimmy necessitated the appointment of a notary public as well as law enforcement assistance in order to obtain access to the decedent’s house in attempts to inventory those assets and locate the 2007 will. The fact that the 2007 will has not yet been located is insufficient proof that no such will exists. •
Joshua also complains on appeal that Jimmy has filed a motion to set aside inter vivos donations by his mother and .father prior to his father’s death, but did not present evidence to support that motion. *418 The same analysis above applies to this claim. That motion has not yet been set for hearing, and the issues related thereto are simply not relevant, nor was Jimmy required to present any evidence related thereto in the hearing on Joshua’s motion to annul based on fraud or ill practice.
Similarly, the only arguments advanced by Joshua in support of his motion to annul concern alleged actions taken by Jimmy after his appointment and in his capacity as the appointed succession administrator. These arguments and allegations have no Irrelevance to the alleged fraud and ill practices committed by Jimmy in seeking his appointment as succession administrator, which is the only issue before us in this appeal.
The only argument advanced by Joshua that relates to alleged fraud and ill practice by Jimmy in seeking appointment is the allegation that Jimmy’s petition to be appointed succession administrator did not notify him or Mrs. Reno of his intention to be named administrator. However, we note that Jimmy waited two months after the decedent’s death to petition the court for appointment as succession administrator. Prior to this time, neither Joshua nor Mrs. Reno, who claimed to be the sole heirs by virtue of a 2011 will, had filed any such petition or sought to open the succession. Moreover, La. C.C.P. art. 3091 provides that any interested person desiring to be notified of the filing of an application for appointment as administrator, at any time after the death of the deceased, may petition the court in which the succession has been opened or may be opened for such notice. The record reflects that neither Joshua nor Mrs. Reno petitioned the court to be given such notice, so they now cannot complain that they did not receive notice, much less, assert that failure as “ill practice” on the part of Jimmy.
For all the foregoing reasons, and from our review of the entire record, we find the district court did not abuse its discretion in finding that Joshua failed to meet his burden of proving the alleged fraud and/or ill practice on the part of Jimmy in seeking and obtaining his appointment as succession administrator of the decedent’s estate.
Accordingly, the July 26, 2013 judgment of the district court, denying Joshua’s petition to vacate and/or annul the order appointing Jimmy as succession administrator, is affirmed. All costs of this appeal are assessed to Joshua Fontenot.
AFFIRMED.
CHUTZ, J., concurs in the results and assigns reasons.
WELCH J., concurs without reasons.

. "The court may appoint a provisional administrator of a succession, pending the appointment of an administrator or the confirmation of an executor, when it deems such appointment necessary to preserve, safeguard, and operate the property of the succession. On the application of an interested party, ... when such an appointment is deemed necessary, the court may appoint a qualified person as provisional administrator forthwith." La. C.C.P. art. 3111.

. Jimmy asserted that he had copies, but not the originals, of the 2007 and 2011 testaments. He claimed he did not know the *414 whereabouts of those documents, but believed they could be located in the house. Thus, he claimed a search therefor was required, as provided by La. C.C.P. art. 2854. That article provides that when a testament is not in the possession of the petitioner, the court may appoint a notary of the Parish directing that a search be made therefor, as well as ordering anyone in possession or control to permit the notary to conduct an examination of all books, papers, bank box, safety deposit vault, or other receptacle likely to contain the testament of the deceased.

. “A final judgment obtained by fraud or ill practices may be annulled.” La. C.C.P. art. 2004(A).