# NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2020 CW 0754

## IN THE MATTER OF THE SUCCESSION OF VIC RENO

Judgment Rendered: ___SEP 2 8 2021___

* * * * * * *

APPEALED FROM THE NINETEENTH JUDICIAL DISTRICT COURT
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 95,632, SECTION 23

HONORABLE WILLIAM A. MORVANT, JUDGE[1]

* * * * * * *

<table>
<tr><td>William C. Shockey<br>Alex T. Griffin<br>Baton Rouge, Louisiana</td><td>Attorneys for Plaintiff/Appellant<br>James B. Reno</td></tr>
<tr><td>Joshua K. Fontenot<br>Baton Rouge, Louisiana</td><td>Defendant/Appellee<br>Pro Se<br>Executor of the Succession<br>Of Vic Reno</td></tr>
</table>

BEFORE: McDONALD, HOLDRIDGE, and PENZATO, JJ.

---

[1] The case was originally presided over by Judge Timothy E. Kelley. On June 1, 2018, Judge Kelley recused himself from the case. The case was then re-allotted to Judge Morvant.

Holdridge J., concurs

**McDONALD, J.**

The decedent, Vic Reno, died on November 25, 2012. Three wills, from 2007, 2008, and 2011, were produced after his death and ongoing litigation ensued. Eventually, the 2008 will was probated. This appeal concerns the denial of payment for certain attorney fees and expenses incurred and submitted by James B. Reno (Jimmy Reno) as the former administrator of the succession. After review, the judgment is reversed in part and affirmed in part.

## FACTS AND PROCEDURAL HISTORY

Vic Reno was survived by his wife, Dorothy Reno (Mrs. Reno), their son, Jimmy Reno, and their daughter, Tammi Reno Bourque. Vic Reno was predeceased by their other son, Victor Reno, who was survived by two daughters, Heather Reno Robinson, and Heidi Reno. Jimmy Reno was appointed the administrator of the succession on March 5, 2012. The dispute over Vic Reno's succession resulted in two prior appeals to this court, **In re Succession of Reno**, 2013-1823 (La. App. 1 Cir. 6/17/15), 175 So.3d 412, and **In re Succession of Reno**, 2015-0854 (La. App. 1 Cir. 9/12/16), 202 So.3d 1147, writ denied, 2016-2106 (La. 2/10/17), 215 So.3d 701.

Thereafter, on August 9, 2017, a joint petition to probate the March 13, 2008 will was filed. The 2008 will was probated on August 23, 2017. The 2008 will named Mrs. Reno as the executrix. Jimmy Reno is not a named legatee under the will.[2] The named legatees are Mrs. Reno, Victor Reno, Tammi Bourque, and grandchildren Joshua K. Fontenot, Kalli Fontenot, and Baylee Reno.

Mrs. Reno was appointed executrix of the succession on October 16, 2018, and Jimmy Reno's letters of administration were recalled on that same date. Mrs.

---

[2] The 2008 will states that "I have omitted from this will my son, [Jimmy] Reno, and his children recognizing that I have previously donated stock in R Square Investment, LLC to my son which I feel is equal in value to my anticipated estate."

2

Reno died on April 19, 2020. Thereafter, Joshua K. Fontenot, became the executor.

Jimmy Reno sought authorization for payment from the succession for attorney fees and related expenses totaling $45,953.43 in Twenty-Second, Twenty-Third, and Twenty-Fourth Petitions for Authority to Pay Succession Debts. Invoices for legal services provided between December 21, 2017, and August 29, 2018, are at issue in this case. Mrs. Reno opposed the payment of most of these attorney fees and expenses.

Jimmy Reno maintained that the attorney fees and expenses were related to the recovery of succession assets, the attempted sale of the Cornerstone condominium in the French Quarter in New Orleans, attempts to settle an ongoing dispute among the Reno family as to how the succession assets should be distributed, and for routine succession work. Mrs. Reno maintained that most of the legal services were provided solely for the benefit of Jimmy Reno, rather than for the benefit of the succession. Mrs. Reno noted that Jimmy Reno engaged an attorney who generated invoices totaling $429,982.81, depleting the succession of over $400,000.00 of estate funds.

After a hearing, the district court issued written reasons for judgment, adopting Mrs. Reno's calculation of attorney fees due and denying in large measure payment of Jimmy Reno's attorney fees and expenses with succession funds. Of the $39,044.48 sought in attorney fees and expenses, the district court authorized payment of $10,255.29. The judgment was signed on December 11, 2018. Jimmy Reno has appealed that judgment.

**THE SHOW CAUSE ORDER**

This court, ex proprio motu, issued a rule to show cause order on October 27, 2020, stating that:

> *[i]t appears that the December 11, 2018 Judgment at issue is not a final, appealable ruling insofar as it does not homologate the*

3

*entirety of the subject tableaus of distribution. (See page 410 of the appellate record).*

The parties were ordered to show cause by briefs filed on or before November 12, 2020, why the appeal should or should not be dismissed.

Appeals from judgments rendered in succession proceedings shall be governed by the rules applicable to appeals in ordinary proceedings, with certain exceptions that do not apply herein. See La. C.C.P. art. 2974. In response to this court's show cause order, Jimmy Reno appears to concede that the judgment at issue is interlocutory, but argues that La. C.C.P. art 3308 permits an immediate appeal from a judgment homologating a tableau of distribution. We agree that the judgment is interlocutory. Interlocutory judgments are appealable only when expressly provided by law. La. C.C.P. art. 2083.

In his argument in response to the show cause order, Jimmy Reno notes that only a suspensive appeal as provided in Article 2123 shall be allowed from a judgment homologating a tableau of distribution. La. C.C.P. art. 3308. In order not to delay the termination of the succession proceedings unnecessarily, only a suspensive appeal is permitted, which must be taken within the delays and under the conditions provided in Art. 2123. La. C.C.P. art. 3308, Official Revision Comment (a). After the delay for a suspensive appeal from the judgment of homolgation has elapsed, the succession representative shall pay the debts approved by the court. La. C.C.P. art. 3307(C).

Given our conclusion that this is an interlocutory judgment, and not immediately appealable, we note the appeal was filed within the delays for seeking supervisory review.[3] Because Jimmy Reno filed the motion for appeal within the

---

[3] A party intending to apply to this court for a supervisory writ shall give notice of such intention by requesting a return date to be set by the district court, which shall not exceed thirty days from the date of the notice of judgment. See Uniform Rules-Courts of Appeal, Rules 4-2 and 4-3.

thirty-day delay provided for seeking supervisory writs, we exercise our discretion to convert the appeal to an application for supervisory writs, and consider the merits of this appeal under our supervisory jurisdiction. See La. Uniform Rules-Courts of Appeal, Rule 4-3; **Stelluto v. Stelluto**, 2005-0074 (La. 6/29/05), 914 So.2d 34, 39 (noting that the decision to convert an appeal to an application for supervisory writ is within the discretion of the appellate courts); **In re Succession of Estate of Johnson**, 2019-0786 (La. App. 1 Cir. 5/28/20), 2020 WL 2789562 (unpublished), writ granted, 2020-00815 (La. 11/24/20) (this court exercised supervisory jurisdiction to review the issue of a conventional usufruct over immovable property in a succession proceeding); and **Successions of Wayne**, 2018-1177 (La. App. 1 Cir. 5/31/19), 2019 WL 2332357 (unpublished) (this court exercised supervisory jurisdiction to review an uncertified judgment that did not resolve the succession, but only concerned three assets in the proceedings).

## THE ASSIGNMENTS OF ERROR

Jimmy Reno makes the following assignments of error.

1.  The district court applied the wrong legal standard in determining whether or not the legal fees at issue are "estate debts" properly payable from the Succession.

2.  The district court erred in denying payment of $39,044.48 for legal fees and expenses that were provided primarily for the benefit of the Succession.

## ASSIGNMENT OF ERROR NO. 1

In this assignment of error, Jimmy Reno maintains that the district court applied the wrong legal standard in determining whether the attorney fees at issue are estate debts properly payable from the succession.

In its written reasons for judgment, the district court stated that:

> [Jimmy] Reno may only recover attorney's fees that were incurred solely for the preservation, management and distribution of the Estate of Vic Reno. *See La. C.C. art. 1415.* According to the First Circuit's opinion in this case, if the Court cannot determine whether

5

the attorney fees and expenditure of estate funds were incurred to preserve, protect and manage estate property or whether they were incurred for [Jimmy] Reno's own personal benefit, then attorney's fees should not be awarded.

Jimmy Reno maintains that the district court, in essence, treated this Court's prior ruling in this case as the law of the case, inappropriately applying a standard that legal work done after the probate of a last will and testament must be solely for the benefit of the succession in order to be payable from succession funds. Rather, he asserts, administration expenses should be broadly construed to include expenses that are incurred after the death of the decedent in preserving, safeguarding, and operating the property of the estate, such as repairs, costs of maintenance and upkeep, interest attributable to a debt, and custodial fees. He maintains that the test that should be applied by this court is whether the legal representation was primarily for the personal benefit of the administrator and not the succession. According to this proposed standard, if the legal representation is not primarily for the benefit of the succession representative, the fees are payable from the succession.

The district court stated in part at the end of the hearing:

And I'm going to say for the record, I've got some real concerns on this, based, first of all, on the rather strong language used by the First Circuit in connection with the prior submission. I've got a suit record that reflects that, in August of last year, the 2008 will was probated by stipulation of the parties and Judge Kelley signed it on August 23, probating it, which named an executrix, which my reading of Code of Civil Procedure Article 3083, basically alleviated the need for an administrator once you had a succession that left the intestate realm and became a testate succession. And I'm looking at almost forty thousand dollars in fees incurred subsequent to the probating of that will. This court began, and almost concluded, a line-by-line itemization. The question being some of these, I was not sure of the nature . . . . of the charges. Having heard testimony, I'm of the opinion, even the Article 3083 issue aside, there may be some things that were done for the benefit of the succession. But I do want the opportunity, now with the benefit of testimony, to go back through. But I can say, with no hesitation, based on what I've read so far in the bills, what I've read from the First Circuit and now what I've heard, is that, the lion['s] share of this does not seem to be for the benefit of the

6

succession. I have no question in my mind, which is kind of why I thought the beginning of this was sort of superfluous as to the adequacy of what Mr. Shockey did, the fees that he charged, the reasonable[ness] of that. The question is: whether or not that's something that should be borne by the succession or should be borne by [Jimmy] Reno himself.

The district court's reasons for judgment noted in part that "[a]fter the presentation of evidence and testimony, the parties were ordered to submit post-trial memoranda on the issue of attorney's fees claimed by [Jimmy] Reno. The post-trial memoranda were to assist the Court in determining **whether the attorney's fees charged were for the benefit of the Estate of Vic Reno or for the benefit of [Jimmy] Reno in his individual capacity.**" (Emphasis added.)

After a thorough review, we find that the district court applied the correct legal standard; that is, whether the attorney fees submitted by Jimmy Reno were for the benefit of the succession or for the benefit of Jimmy Reno in his individual capacity. This assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

In this assignment of error, Jimmy Reno maintains that the district court erred in denying payment of $39,044.48 for attorney fees and expenses that were provided primarily for the benefit of the succession.

A succession representative may pay an estate debt only with the authorization of the court. La. C.C.P. art. 3301.[4] The procedure for the payment of estate debts is provided in La. C.C.P. art. 3303, as follows:

A. When a succession representative desires to pay estate debts, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution listing those estate debts to be paid. A court order shall not be required for the publication of the notice of filing of a tableau of distribution.

B. If the funds in his hands are insufficient to pay all the estate debts in full, the tableau of distribution shall show the total funds

---

[4] The article further provides, "except as provided by Articles 3224 and 3302." Those exceptions are inapplicable here.

7

available and shall list the proposed payments according to the rank of the privileges and mortgages of the creditors.

Estate debts are debts of the decedent and administration expenses. Debts of the decedent are obligations of the decedent or those that arise as a result of his death, such as the cost of his funeral and burial. Administration expenses are obligations incurred in the collection, preservation, management, and distribution of the estate of the decedent. La. C.C. art. 1415. Administration expenses are broadly defined to include expenses that are incurred after death in preserving, safeguarding, and operating the property of the estate, such as repairs, costs of maintenance and upkeep, interest attributable to a debt, and custodial fees. La. C.C. art. 1415, Revision Comments-1997.

Louisiana jurisprudence establishes there are instances when attorney fees incurred by the succession representative may be classified as estate debts. Additionally, legal expenses of administration incurred by an executor on behalf of the estate, and expenses incurred in defense of the will under attack, are proper charges against the succession. However, while the estate may be liable for attorney fees incurred by the administrator for services performed for the benefit of the estate, the estate is not liable for attorney fees for services that benefit the administrator individually. **In re Succession of Reno**, 202 So.3d at 1154.

Legal fees incurred by attorneys for the executor in "winding up" the succession may be approved as estate debts. **Succession of Daste**, 254 La. 403, 223 So.2d 848, 855 (La. 1969). On November 9, 2017, the district court ordered Jimmy Reno to come up with a plan to close the succession. The case management schedule from that date ordered "Succession closure plans to be exchanged and provided to court by December 22, 2017."

The Twenty-Second Petition for Authority to Pay Succession Debts sought payment by the succession to Cornerstone Association for condominium dues of

8

$4,257.00, and to Shockey & Associates for attorney fees of $14,906.88, for a total of $19,163.88. The Twenty-Third Petition for Authority to Pay Succession Debts sought payment by the succession for Cornerstone Association condominium dues of $803.95, reimbursement for Jimmy Reno's bond premium of $1,420.00, and payment to Shockey & Associates for attorney fees of $5,531.86, for a total of $7,755.81. The Twenty-Fourth Petition for Authority to Pay Succession Debts sought payment by the succession to Neil G. Ferrari for accounting services of $410.00, and to Shockey & Associates for attorney fees of $18,605.74, for a total of $19,015.74. The district court approved the payment of $3,577.50 in attorney fees related to invoice number 7080; $870.00 in attorney fees related to invoice number 7111; and $4,645.25 in attorney fees related to invoice number 7328. The district court also awarded court costs adjusted to $685.54 related to invoice number 7080; $350.00 related to invoice number 7111; and $127.00 related to invoice number 7238.

In its reasons for judgment, the district court noted that the amounts awarded to Jimmy Reno for attorney fees were substantially higher than its calculations for attorney fees due to Jimmy Reno. However, as Mrs. Reno had consented to a higher amount, the district court awarded that higher amount. The district court also noted in its reasons for judgment:

> After the presentation of evidence and testimony, the parties were ordered to submit post-trial memoranda on the issue of attorney's fees claimed by [Jimmy] Reno. The post-trial memoranda were to assist the Court in determining whether the attorney's fees charged were for the benefit of the Estate of Vic Reno or for the benefit of [Jimmy] Reno in his individual capacity. The post-trial memoranda were received by the Court, and the matter is now deemed to be submitted.
>
> . . . . .
>
> The Court has closely reviewed the invoices provided by [Jimmy] Reno's counsel for attorney's fees and costs. For the Court's consideration, [Mrs.] Reno's counsel submitted three (3) tables for each invoice in dispute (Invoice No. 7080, Invoice No. 7111, and

9

Invoice No. 7238.) The tables explain, in detail, which attorney's fees [Mrs. Reno] objects to paying and which attorney's fees [Mrs.] Reno consents to paying.

In contesting most of the fees submitted by Jimmy Reno, Mrs. Reno had maintained that it was impossible to determine what fees were incurred for the preservation, management, and protection of the succession property.

Jimmy Reno maintains that most of the legal services for which payment was denied largely fell into three categories. The first category was legal services related to several properties that were the subject of an action by Jimmy Reno to annul inter vivos donations made to Joshua K. Fontenot by the decedent and Mrs. Reno in 2009. The second category was legal services that were provided in an attempt to preserve and sell the Cornerstone condominium in the French Quarter. The third category was legal services associated with an attempted settlement among Jimmy Reno, Joshua K. Fontenot, Mrs. Reno, and the remainder of the legatees.

After a thorough review, we find that the charges for the cleaning of the Cornerstone condominium, $350.00, and re-keying of the condominium, $115.00, (a total of $465.00) were clearly for the preservation, management, and protection of the succession property and that the district court abused its discretion in not awarding those amounts.

Regarding the other contested attorney fees and related costs submitted by Jimmy Reno for payment, we find no abuse of discretion by the district court in finding these fees and costs were not shown to be for the preservation, management, and protection of the succession property and not awarding those amounts. A number of these items regard the settlement proposal drafted and circulated after the 2008 will was probated, wherein Jimmy Reno proposed a settlement in order to close the succession. This included proposed annulments of

10

donations of property by Vic Reno to Joshua K. Fontenot, Jimmy Reno's proposal to accept a vintage Corvette in lieu of administrator's fees, and Heather Reno Robinson's (also a client of Shockey & Associates) offer to purchase Vic Reno's interest in the Cornerstone condominium, and charges related to property co-owned by Jimmy Reno. Other charges are vague or appear duplicative.

Therefore, for the foregoing reasons, we reverse the district court judgment in part to order the succession to pay an additional $465.00 in costs for cleaning and re-keying the Cornerstone Condominium. In all other aspects, the judgment is affirmed.

## CONCLUSION

For the foregoing reasons, the appeal is converted to an application for supervisory writs, and the writ is granted. The district court judgment is reversed in part to order the succession to pay an additional $465.00 in costs. In all other aspects, the judgment is affirmed. Costs of this appeal are assessed one-half against James B. Reno and one-half against Joshua K. Fontenot, as Executor of the Succession of Vic Reno.

## DECREE

**APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT GRANTED; JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.**

11